1  RICHARD J. IDELL (SBN 069033)
2  OWEN SEITEL (SBN 137365)
   ELIZABETH J. REST (SBN 244756)
3  IDELL & SEITEL LLP
   Merchants Exchange Building
4  465 California Street, Suite 300
   San Francisco, California 94104
5  Telephone: (415) 986-2400
   Facsimile: (415) 392-9259
6  Email: Richard.idell@idellseitel.com; oseitel@idellseitel.com;
7  erest@idellseitel.com
8  JANN MOORHEAD (SBN 182797) (*admission to Northern District pending*)
9  LAW OFFICE OF JANN MOORHEAD
   43 La Crescenta Way
10 San Rafael, California 94901
   Telephone: (415) 785-7200
11 Facsimile: (415) 785-7220
12 Email: jannmoorhead@comcast.net

13 *Attorneys for Plaintiff Skee Ball, Inc.,*
14 *a Pennsylvania corporation*

15          **UNITED STATES DISTRICT COURT**

16          **NORTHERN DISTRICT OF CALIFORNIA**

17 SKEE BALL, INC., a Pennsylvania corporation,   Case No.      **CV 11      4930**

18              Plaintiff,                         ) **COMPLAINT FOR INJUNCTIVE**
19     v.                                          ) **RELIEF AND DAMAGES – (1)**
                                                   ) **CANCELLATION OF TRADEMARK [15**
20 FULL CIRCLE UNITED, LLC, a New York            ) **U.S.C. §§ 1064(3) and 1119]; (2)**
   limited liability company; and DOES 1 through  ) **TRADEMARK INFRINGEMENT [15**
21 100, inclusive,                                 ) **U.S.C. § 1114]; (3) TRADEMARK**
                                                   ) **DILUTION AND TARNISHMENT [15**
22              Defendants.                        ) **U.S.C. § 1125 (c)]; (4) FALSE**
                                                   ) **DESIGNATION OF ORIGIN [15 U.S.C. §**
23                                                 ) **1125 (a)]; and (5) UNFAIR**
24                                                 ) **COMPETITION**
25                                                 )
                                                   ) **DEMAND FOR JURY TRIAL**
26                                                 )

27          COMES NOW, Plaintiff SKEE BALL, INC., a Pennsylvania corporation ("Plaintiff"), by and

28 through its attorneys Idell & Seitel LLP, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter.  This is a civil action arising under the trademark laws of the United States, for infringement of a trademark registered in the United States Patent and Trademark Office and for unfair competition. This action arises under the Lanham Act at 15 U.S.C. § 1125(a) *et seq.* and under the common law.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337, 1338 and 15 U.S.C. § 1121 *et seq.*

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §1400(a) because Defendants solicit and do business in this District and Defendants' unlawful activities, as alleged herein, were committed, or had a substantial impact in the Northern District of California where Plaintiff does business.

3.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of acting or causing consequences in the Northern District of California.  The infringement, dilution and unfair competition alleged herein arises from Defendants' activities in the Northern District of California and the acts and the consequences caused by Defendants have a substantial connection with the Northern District of California such that the exercise of jurisdiction over Defendants is fair and reasonable.  Defendants are located in this District and did the acts alleged herein in this District.  Plaintiff is informed and believes that this case is properly filed in the Northern Division because Defendants conduct business in San Francisco, California.

## THE PLAINTIFF

4.     Plaintiff SKEE BALL, Inc., is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Chalfont, Pennsylvania. Plaintiff is engaged in the business of, *inter alia*, marketing, manufacturing and distributing the well-known and famous arcade game, Skee Ball (the "Game").  Skee Ball began as an arcade game in or about 1908. The Game is similar to bowling except that it is played on an inclined lane and the player aims to get the ball to fall into various holes corresponding to different point values.  The object of the Game is to collect as many points as possible.  Over the years, Plaintiff has created various versions of the Game, and/or licensed others to do so, including a miniature table version and a wildly popular version for the Apple iPhone.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**THE DEFENDANTS**

5.     Plaintiff is informed and believes and on that basis alleges that Defendant FULL CIRCLE UNITED, LLC ("Full Circle" or "Defendant") is a limited liability company organized under the laws of the State of New York with its principal place of business located at 141 Devoe Street, Suite 3, Brooklyn, New York 11211.   On information and belief, Full Circle is engaged in the business of arranging and conducting Skee Ball competitions throughout the United States, including within San Francisco, California, arranging and coordinating "league" Skee Ball play, and providing a website that advertises its competitions and league play.   Defendant Full Circle holds itself out to the public as the "First-Ever Competitive Skee Ball League."   On information and belief, Defendant Full Circle is also the owner and/or operator of the Full Circle Bar located at 318 Grand Street, Williamsburg - Brooklyn, New York 11211.  Defendant operates its Skee Ball competitions at its Full Circle Bar in New York, as well as other establishments throughout the United States.  Defendant advertises that it has a "Skee Ball Stadium" at its Full Circle Bar in New York.   Defendant also advertises that its Full Circle Bar is the "National Home of Brewskee-Ball."

6.     Plaintiff is informed and believes and, on that basis, alleges that various persons and entities, whose names are presently unknown to Plaintiff, participated in and are liable for the wrongful acts set forth herein.   Those persons and entities are named herein as DOES 1 through 100, inclusive. Plaintiff will seek leave of court to amend the Complaint to add such persons and entities as Defendants and to allege the exact nature of their wrongful conduct when such information has been ascertained. Plaintiff is informed and believes and thereupon alleges that such unknown persons and entities are engaged, *inter alia*, in the trademark infringement, dilution and unfair competition that are the subject of this action.

7.     Plaintiff is informed and believes and, on that basis, alleges that, in connection with the acts set forth herein, each of the Defendants acted willingly, intentionally, and knowingly, both for himself, herself, or itself, and in concert with certain other Defendants, and that certain of the Defendants acted as an agents for each other Defendants, and were at all times acting within the course and scope of such agency, with the consent, authorization and/or ratification of the other Defendants, and in furtherance of a common scheme to infringe the trademarks and other valuable rights of

1    Plaintiff.

2        8.      Hereafter, when not referred to specifically and individually, Defendants Full Circle and

3    DOES 1 through 100, shall be referred to collectively as "Defendants."

4                            **PLAINTIFF'S EXCLUSIVE RIGHTS**

5        9.      At all times material hereto, Plaintiff is and has been the sole and exclusive owner and

6    user of the unique, famous and inherently distinctive trademark SKEE-BALL (the "Mark") for a "game

7    in the nature of a bowling game and parts thereof."

8        10.     The Mark was originally used in commerce on December 8, 1908.  The Mark was

9    registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") on

10   May 5, 1929, under the Trademark Act of 1905.  Registration of a mark under the Act of 1905 is *prima*

11   *facie* evidence of the validity of the mark, of the registrant's ownership of the mark and of the

12   registrant's exclusive right to use the mark in commerce in connection with the goods and services set

13   forth in the registration.  15 U.S.C. § 1115 (Lanham Act § 33).

14       11.     The Mark has been renewed without interruption and remains registered on the Principal

15   Register of the USPTO.  Plaintiff owns the registration, which is and continues to be in full force and

16   effect.  True and correct copies of the original Mark Registration Certificate issued in 1929, and

17   subsequent renewal Registration Certificates, are attached hereto as Exhibit "A" and incorporated

18   herein by this reference.

19       12.     The Mark is incontestable pursuant to 15 U.S.C. § 1065 (Lanham Act § 15) and a

20   Section 15 Affidavit was filed and accepted by the USPTO in or about October of 1954.  An

21   incontestable mark is conclusive, not merely *prima facie*, evidence of the validity of the mark, of the

22   registrant's ownership of the mark and of the registrant's exclusive right to use the mark in commerce

23   in connection with the goods and services set forth in the registration.  15 U.S.C. § 1115 (Lanham Act §

24   33).

25       13.     The Mark is famous and is widely recognized by the consuming public of the United

26   States as a designation of source of the goods and services of Plaintiff.

27       14.     Plaintiff's goods and services have been and are extensively advertised, publicized, and

28   sold throughout the world, and throughout California, under the SKEE BALL Mark.  By virtue thereof,

1   together with consumer acceptance and recognition of the Mark, the Mark identifies Plaintiff's goods

2   and services only, and distinguishes them from those of others.

3       15.    Plaintiff affixes the Mark to all copies of the Game and uses the Mark in all marketing

4   and advertising for the Game in accordance with 15 U.S.C. § 1111 (Lanham Act § 11).

5       16.    As set forth in detail below, Defendants have registered a trademark wholly containing

6   the Mark in violation of USPTO rules and regulations, and are making unauthorized uses of the Mark

7   in contradiction to Plaintiff's exclusive rights.

8                    **FACTUAL BACKGROUND COMMON TO ALL CLAIMS**

9       17.    Defendant Full Circle registered the trademark BREWSKEE-BALL on the Principal

10  Register on February 26, 2008, and claimed in its registration application to have been using the mark

11  since December of 2005.  The BREWSKEE-BALL mark is registered in Class 41 for: "Entertainment

12  in the nature of skee-ball games; entertainment services, namely, arranging and conducting of skee-ball

13  competitions; providing a website that provides statistics for skee-ball league players; providing

14  recognition and incentives by the way of awards to demonstrate excellence in the field of skee-ball."  A

15  true and correct copy of the Registration Certificate for the BREWSKEE-BALL mark is attached

16  hereto as Exhibit "B" and incorporated herein by this reference.

17      18.    The Trademark Manual of Examining Procedure ("TMEP") does not allow the mention

18  of a registered trademark or service mark that is registered to an entity other than the applicant in the

19  identification of goods or services.  *See*, TMEP 1402.09.  The USPTO's reason for this is that it is

20  inappropriate to use a registered mark to identify a kind of product or a service, because such a mark

21  indicates origin in only one party and cannot be used to define goods that originate in a party other than

22  the registrant. *Id.*; *Camloc Fastener Corp. v. Grant*, 119 USPQ 264, 265 n.1 (TTAB 1958).  In place of

23  the mark, a generic term must be used. *See*, TMEP 1402.09.

24      19.    As shown above, Full Circle wrongfully wholly incorporates Plaintiff's Mark into its

25  own mark, BREWSKEE-BALL in violation of the Lanham Act and the USPTO regulations.

26  Moreover, Full Circle used Plaintiff's Mark <u>four times</u> in its identification of goods and services in

27  clear violation of TMEP 1402.09.  Full Circle's BREWSKEE-BALL mark registration was issued in

28  error and should be canceled.

20.     On information and belief, Defendant Full Circle is engaged in the business of arranging and conducting Skee Ball competitions throughout the United States, including, but not limited to, within San Francisco, California, arranging for "league" Skee Ball play, and providing a website that advertises its competitions and league play.  Defendant Full Circle holds itself out to the public as the "First-Ever Competitive **Skee Ball** League" (bold added).  A true and correct copy of the home page of Full Circle's Internet website (www.brewskeeball.com) is attached hereto as Exhibit "C" and incorporated herein by this reference.  A true and correct copy of the "San Francisco" page of Full Circle's Internet website is attached hereto as Exhibit "D" and incorporated herein by this reference.

21.     On information and belief, Defendant Full Circle is also the owner and/or operator of the Full Circle Bar located at 318 Grand Street, Williamsburg - Brooklyn, New York 11211.  Defendant operates its Skee Ball competitions at its Full Circle Bar in New York, as well as other establishments throughout the United States.  Defendant advertises that it has a "Skee Ball Stadium" at its Full Circle Bar in New York.  Defendant also advertises that its Full Circle Bar is the "National Home of Brewskee-Ball."  A true and correct copy of the Full Circle Bar website (www.fullcirclebar.com) home page is attached hereto as Exhibit "E" and incorporated herein by this reference.

22.     Defendant Full Circle is also engaged in the business of arranging and conducting "BaseSKEEball" competitions, which appear to be a game containing elements of Plaintiff's Skee Ball Game and baseball. A true and correct copy of the "BaseSKEEball" page of Full Circle's Internet website is attached hereto as Exhibit "F" and incorporated herein by this reference.

23.     Defendant uses Plaintiff's Mark in connection with the sale, offering for sale and advertising of its "Skee Ball League" and "BaseSKEEball" league services.  On information and belief, Defendant uses Plaintiff's Mark, SKEE BALL (with and without the hyphenation), extensively on its Internet website, in its print and media advertising, in its promotional materials, on its prize materials, and in its Internet domain name (http://brewskeeball.com) in connection with Defendant's "Skee Ball" leagues and competitions. *See*, Exhibits C, D, E and F.

24.     Defendants' use of the Plaintiff's Mark goes well-beyond that which would be required to simply identify the goods and services of Plaintiff.

25.     There exists an overlap in Plaintiff's and Defendant's trade areas in that both Plaintiff's

and Defendant's services are advertised and rendered in the same markets, including within California.

26.   Defendant's use of Plaintiff's Mark as set forth herein is likely to cause confusion, mistake, or deception among consumers and potential consumers.

27.   On or about April 16, 2010, Plaintiff's counsel wrote to Defendant instructing them to cease and desist all uses of the Mark without authorization from Plaintiff.  A true and correct copy of Plaintiff's letter to Defendant dated April 16, 2010, is attached hereto as Exhibit "G" and incorporated herein by this reference.

28.   In early 2011, Defendant engaged Plaintiff in negotiations for a trademark license and marketing agreement that would allow Defendant to use the Mark pursuant to certain terms and conditions.  In fact, Plaintiff offered Defendant an exclusive U.S. license to use the Mark in conjunction with a league format.  Although negotiations continued for several months, negotiations broke down and no agreement was reached.

29.   After negotiations ceased, Defendant continued to use Plaintiff's Mark without authorization.  Defendant knew it did not have Plaintiff's authorization or permission to use Plaintiff's Mark; thus, all use after receipt of the cease and desist letter is clearly willful.  Nevertheless, Defendant continued to knowingly and willfully use Plaintiff's Mark.

30.   Plaintiff's counsel again wrote to Defendant on July 6, 2011, instructing them to cease and desist all uses of the Mark without authorization from Plaintiff.   A true and correct copy of Plaintiff's letter to Defendant dated July 6, 2011, is attached hereto as Exhibit "H" and incorporated herein by this reference.

31.   Defendant responded to Plaintiff's July 6, 2011, correspondence and indicated that it had no intention to cease the unauthorized use of Plaintiff's Mark. To date, Full Circle has failed and refused, and continues to fail and refuse, to comply with Plaintiff's request that Defendant cease use of the Mark.   To date, Defendant continues to knowingly and willfully use Plaintiff's Mark without Plaintiff's permission or authorization.

32.   All of Plaintiff's marketing, distribution and use of the Game contains Plaintiff's Mark identifying Plaintiff as the exclusive owner of the Game, the Mark and the good will associated therewith.

33.    Plaintiff has never authorized Defendants, or any of them, by license or otherwise, to use the Mark.

34.    Defendants' unauthorized use of the Mark is an infringement of Plaintiff's Mark.

35.    Defendants' unauthorized use of the Mark is diluting and tarnishing Plaintiff's famous Mark.

## ATTORNEYS' FEES

36.    By reason of the wrongful acts of Defendants, Plaintiff has been forced to retain counsel to prosecute the present action.  As a result, Plaintiff will incur attorneys' fees and litigation costs in an amount yet to be fully ascertained, but which is reasonably expected to exceed Two Hundred and Fifty Thousand Dollars ($250,000.00) should this matter proceed to trial.  Plaintiff will seek to amend this Complaint to set forth the full amount upon ascertainment of same.

37.    Based on Defendants' deliberate and willful infringement of Plaintiff's Mark, Plaintiff seeks recovery of its attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §1117 (a)(3).

## FIRST CLAIM FOR RELIEF

### [Cancelation of Trademark Registration -- Against Defendant Full Circle (15 U.S.C. §§ 1064(3) and 1119)]

38.    Plaintiff repeats, realleges and incorporates by this reference, as though set forth in full, paragraphs 1 through 37 above.

39.    Defendant Full Circle registered the trademark BREWSKEE-BALL on the Principal Register on February 26, 2008, and claimed in its registration application to have been using the mark since December of 2005.  The BREWSKEE-BALL mark is registered in Class 41 for: "Entertainment in the nature of skee-ball games; entertainment services, namely, arranging and conducting of skee-ball competitions; providing a website that provides statistics for skee-ball league players; providing recognition and incentives by the way of awards to demonstrate excellence in the field of skee-ball." *See*, Exhibit "B".

40.    The Trademark Manual of Examining Procedure ("TMEP") does not allow the mention of a registered trademark or service mark that is registered to an entity other than the applicant in the

1   identification of goods or services. *See*, TMEP 1402.09. The USPTO's reason for this is that it is

2   inappropriate to use a registered mark to identify a kind of product or a service, because such a mark

3   indicates origin in only one party and cannot be used to define goods that originate in a party other than

4   the registrant. *Id.*; *Camloc Fastener Corp. v. Grant*, 119 USPQ 264, 265 n.1 (TTAB 1958). In place of

5   the mark, a generic term must be used. *See*, TMEP 1402.09.

6   41.   As show above, Full Circle wholly incorporates Plaintiff's Mark, SKEE-BALL, into its

7   mark, BREWSKEE-BALL.

8   42.   Moreover, Full Circle used Plaintiff's Mark <u>four times</u> in its identification of goods and

9   services in clear violation of TMEP 1402.09. Full Circle used Plaintiff's registered Mark in its goods

10  and services description in violation of USPTO rules and the Lanham Act.

11  43.   The BREWSKEE-BALL trademark registration was obtained contrary to the provisions

12  of the Lanham Act. Full Circle's BREWSKEE-BALL mark application was filed in contradiction of

13  the USPTO's rules, and the registration was issued in error and should be canceled.

14  44.   Moreover, as alleged herein, Defendant Full Circle is using the BREWSKEE-BALL

15  mark in a manner that misrepresents the source of its goods and/or services. Full Circle advertises and

16  promotes itself as the "First-Ever Competitive **Skee Ball** League," thereby misleading the public in a

17  manner that is likely to cause confusion, cause mistake or deceive consumers into wrongly believing

18  that Defendant's services are distributed, provided and/or endorsed by Plaintiff. 15 U.S.C. § 1064 (3);

19  *see*, Exhibit "C." Defendant also holds itself and its Full Circle Bar out to the public as the "National

20  Home of Brewskee-Ball." *See*, Exhibit "E."

21  45.   In any action involving a registered mark, such as the BREWSKEE-BALL mark, a

22  Court may order the cancellation of a mark's registration, in whole or in part. 15 U.S.C. § 1119.

23  46.   Unless Full Circle's BREWSKEE-BALL mark registration is canceled, harm will

24  continue to ensue to Plaintiff in that Plaintiff's customers will continue to be misled and confused as to

25  the source of Defendant's services.

26  47.   Plaintiff prays for cancelation of Full Circle's BREWSKEE-BALL registration,

27  Registration No. 3,389,014, pursuant to 15 U.S.C. § 1064 and 1119.

28  //

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CLAIM FOR RELIEF

### [Trademark Infringement -- Against All Defendants (15 U.S.C. § 1114, *et seq.*)]

48.    Plaintiff repeats, realleges and incorporates by this reference, as though set forth in full, paragraphs 1 through 47 above.

49.    All of Plaintiff's uses of the Game and the Mark utilize Plaintiff's Mark, as defined herein, identifying Plaintiff as the exclusive source of the Game.  Plaintiff affixes the Mark to all copies of the Game and uses the Mark in all marketing and advertising for the Game in accordance with 15 U.S.C. § 1111 (Lanham Act § 11).

50.    Plaintiff's goods and services have been and are extensively advertised, publicized, and sold throughout the world, including throughout California, under the SKEE BALL Mark.  By virtue thereof, together with consumer acceptance and recognition of the Mark, the Mark identifies Plaintiff's goods and services only, and distinguishes them from those of others.

51.    As set forth in detail herein, Defendants have registered a trademark wholly containing the Mark in violation of USPTO rules and regulations, and are using the Mark without authorization, in bad faith, and over the objection of Plaintiff in contradiction to Plaintiff's exclusive rights.

52.    Plaintiff has never authorized Defendants, or any of them, by license or otherwise, to use the Mark.  In fact, after Plaintiff's first cease and desist letter in 2010, Defendant Full Circle initiated negotiations with Plaintiff for a license allowing Full Circle to use Plaintiff's Mark, but negotiations were unsuccessful.  Nevertheless, Full Circle's use of Plaintiff's Mark continues unabated.  Defendant knew it did not have Plaintiff's authorization or permission to use Plaintiff's Mark and all use after receipt of Plaintiff's initial cease and desist letter is clearly willful.

53.    On information and belief, Defendants have infringed, and will continue to infringe, the Mark in interstate commerce by using the Mark in connection with the sale, offering for sale and advertising of its "Skee Ball League" and "BaseSKEEball" league services.

54.    On information and belief, Defendant uses the Mark, SKEE BALL (with and without the hyphenation), extensively on its Internet website, in its print and media advertising, in its promotional materials, on its prize materials, and in its Internet domain name (http://www.brewskeeball.com) in connection with Defendant's "Skee Ball" leagues and competitions,

1    all without the knowledge and consent of Plaintiff. *See*, Exhibits C, D, E and F.

2        55.    Defendants' use of the Plaintiff's SKEE-BALL Mark is not fair use.  As alleged herein,

3    Defendant Full Circle has wrongfully and in bad faith wholly incorporated Plaintiff's Mark into its own

4    trademark in violation of the Lanham Act and the USPTO rules and regulations.  Defendant is also not

5    using Plaintiff's Mark in order to distinguish the Defendants' goods and/or services from Plaintiff's.

6    Additionally, Defendants' use of the Plaintiff's Mark goes well-beyond that which would be required to

7    simply identify the goods and services of Plaintiff, and far-beyond that which would be required to only

8    describe Defendants' goods and/or services.

9        56.    On information and belief the wrongful conduct of Defendants is likely to cause

10   confusion, cause mistake or deceive consumers into wrongly and unfairly believing that Defendant's

11   services are distributed, provided and/or endorsed by Plaintiff.

12       57.    Plaintiff is informed and believes, and upon that basis alleges that Defendants' acts of

13   trademark infringement have been committed knowingly, willfully and with the intent to cause

14   confusion and mistake as to the source of Defendant's services.

15       58.    The goodwill of Plaintiff's business under the Mark is of enormous value, and Plaintiff

16   will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade

17   reputation and goodwill.

18       59.    Plaintiff has been damaged and is likely to be further damaged by the foregoing acts of

19   Defendants in that the public will be confused, mistaken and deceived as to the true source, sponsorship

20   and/or affiliation of Defendants' services.

21       60.    Unless restrained and enjoined, Defendants will continue to act as alleged above, all to

22   Plaintiff's irreparable injury.  The amount of compensation that would afford adequate relief to Plaintiff

23   for such injury will be difficult to ascertain.  The wrongful acts of Defendants are of a continuing nature

24   and will require a multiplicity of judicial proceedings.  Accordingly, Plaintiff's remedy at law is

25   inadequate, and Plaintiff is entitled to permanent injunctive relief in accordance with the Lanham Act,

26   15 U.S.C. § 1116 to enjoin the conduct of Defendants alleged herein.

27       61.    Plaintiff is informed and believes and thereon alleges that as a proximate result of

28   advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and

1  consumer recognition, and as a proximate result of the confusion or deception or mistake, or any

2  combination thereof caused by Defendant's advertising and sale of its services bearing the names

3  "Brewskee-Ball" and "BaseSKEEball," Defendant has made and will continue to make substantial

4  revenues.

5       62.    Notwithstanding the foregoing, as the direct and proximate result of the wrongful acts of

6  Defendants, Plaintiff has been damaged, and continues to incur damages, in an amount according to

7  proof at trial.  Plaintiff will seek leave of Court to amend this Complaint when the full nature and extent

8  of such monetary damages are ascertained.

9       63.    Defendants' uses of the names "Brewskee-Ball" and "BaseSKEEball" are an

10  infringement of Plaintiff's registered Mark, to Plaintiff's general damage.

11       64.    Plaintiff prays for damages as provided by the Lanham Act for willful, knowing and

12  intentional infringement of a federally registered trademark under the Lanham Act, 15 U.S.C. § 1117.

13  **THIRD CLAIM FOR RELIEF**

14  **[Dilution and Tarnishment of Famous Mark -- Against All Defendants (15 U.S.C. § 1125 (c)]**

15       65.    Plaintiff repeats, realleges and incorporates by this reference, as though set forth in full,

16  paragraphs 1 through 64 above.

17       66.    Plaintiff's Mark is, and since <u>1908</u> continuously has been, widely recognized by the

18  general consuming public of the United States, including California, as a designation of the source of

19  Plaintiff's services. Plaintiff's Mark is famous and distinctive.

20       67.    On information and belief, Defendant began using its mark, BREWSKEE-BALL, in

21  approximately 2005, *almost 100 years after Plaintiff's first use of the Mark in 1908.*

22       68.    Defendant's mark wholly incorporates Plaintiff's famous mark and is thus nearly

23  identical to Plaintiff's Mark.

24       69.    Furthermore, Defendant uses Plaintiff's Mark abundantly and excessively in the

25  advertising and promotion of Defendant's services.  *See*, Exhibits C, D, E and F.

26       70.    As a result of the similarity between Defendant's mark and Plaintiff's famous SKEE

27  BALL Mark, Defendants will continue to impair the distinctiveness, dilute, and harm the reputation of

28  Plaintiff's Mark.

71.     Plaintiff is informed and believes, and upon that basis alleges that Defendants' acts as alleged herein have been committed knowingly, willfully and with the intent to dilute and tarnish Plaintiff's famous Mark.

72.     Unless restrained and enjoined, Defendants will continue to act as alleged above, all to Plaintiff's irreparable injury.  The amount of compensation that would afford adequate relief to Plaintiff for such injury will be difficult to ascertain.  The wrongful acts of Defendants are of a continuing nature and will require a multiplicity of judicial proceedings.  Accordingly, Plaintiff's remedy at law is inadequate, and Plaintiff is entitled to permanent injunctive relief in accordance with the Lanham Act, 15 U.S.C. §§ 1116 and 1125, to enjoin the conduct of Defendants alleged herein.

73.     Plaintiff is informed and believes and thereon alleges that as a proximate result of the advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of the confusion or deception or mistake, or any combination thereof caused by Defendant's advertising and sale of its services bearing the names "Brewskee-Ball" and "BaseSKEEball," Defendant has made substantial revenues.

74.     Notwithstanding the foregoing, as the direct and proximate result of the wrongful acts of Defendants, Plaintiff has been damaged, and continues to incur damages, in an amount according to proof at trial.  Plaintiff will seek leave of Court to amend this Complaint when the full nature and extent of such monetary damages are ascertained.

75.     Plaintiff prays for damages as provided by the Lanham Act for willful, knowing and intentional dilution and tarnishment of a federally registered trademark under the Lanham Act, 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF

### [False Designation of Origin -- Against All Defendants (15 U.S.C. § 1125(a))]

76.     Plaintiff repeats, realleges and incorporates by this reference, as though set forth in full, paragraphs 1 through 75 above.

77.     Defendants' unauthorized use, in interstate commerce, of Plaintiff's Mark is a knowing use and false designation of the services being offered by Defendant, creates a false impression and a likelihood of confusion among the public as to the source of Defendant's services, and constitutes a

1  false designation or representation in commerce.

2       78.    By reason of the foregoing, Defendants have violated and are continuing to violate 15

3  U.S.C. §1125(a), causing injury to Plaintiff.

4       79.    Plaintiff has no adequate remedy at law, and the aforesaid false designations and

5  representations have caused and will continue to cause Plaintiff irreparable harm and injury.

6       80.    Unless restrained and enjoined, Defendants will continue to act as alleged above, all to

7  Plaintiff's irreparable injury.  The amount of compensation that would afford adequate relief to Plaintiff

8  for such injury will be difficult to ascertain.  The wrongful acts of Defendants are of a continuing nature

9  and will require a multiplicity of judicial proceedings.  Accordingly, Plaintiff's remedy at law is

10  inadequate, and Plaintiff is entitled to permanent injunctive relief to enjoin the conduct of Defendants

11  alleged herein.

12      81.    Defendants have obtained and will continue to obtain gain, profit and advantage as a

13  result of their wrongful acts in an amount not yet determined, but believed to be in excess of One

14  Million Dollars (1,000,000.00).

15      82.    Plaintiff prays for damages as provided by the Lanham Act for willful, knowing and

16  intentional false designation of origin with regard to a federally registered trademark under the Lanham

17  Act, 15 U.S.C. § 1117.

18                         **FIFTH CLAIM FOR RELIEF**

19              **[Common Law Unfair Competition -- Against All Defendants]**

20      83.    Plaintiff repeats, realleges and incorporates by this reference, as though set forth in full,

21  paragraphs 1 through 81 above.

22      84.    Defendants' conduct, as set forth herein, in using Plaintiff's Mark, knowingly and

23  without authority or permission from Plaintiff, is in contravention of Plaintiff's rights, both statutory

24  and at common law, constitutes unfair trade practices and constitutes unfair competition, all to

25  Plaintiff's substantial detriment.

26      85.    Plaintiff has no adequate remedy at law and the aforesaid trade practices and unfair

27  competition have caused and will continue to cause Plaintiff irreparable harm and injury.

28      86.    Unless restrained and enjoined, Defendants will continue to act as alleged above, all to

1  Plaintiff's irreparable injury. The amount of compensation that would afford adequate relief to Plaintiff

2  for such injury will be difficult to ascertain. The wrongful acts of Defendants are of a continuing nature

3  and will require a multiplicity of judicial proceedings. Accordingly, Plaintiff's remedy at law is

4  inadequate, and Plaintiff is entitled to permanent injunctive relief to enjoin the conduct of Defendants

5  alleged herein.

6        87.   Defendants have obtained and will continue to gain profit and advantage as a result of

7  their wrongful acts in an amount not yet determined, but believed to be in excess of One Million

8  Dollars ($1,000,000.00).

9  **PRAYER FOR RELIEF**

10     **WHEREFORE**, Plaintiff prays for judgment as follows:

11        1.   For an order declaring Plaintiff to be the exclusive owner of the famous Mark SKEE

12  BALL.

13        2.   For an Order directing the cancellation of the federal United States Patent and

14  Trademark Office registration of Full Circle's BREWSKEE-BALL mark, Registration Number

15  3,389,014.

16        3.   That the Defendants, and each of them, and each of their agents, servants, and

17  employees, and all persons acting under and/or in concert with Defendants, be permanently enjoined

18  from using or displaying the name SKEE BALL or any colorable imitation of Plaintiff's Mark in

19  connection with Defendant's "Skee Ball" leagues and competitions.

20        4.   For an order requiring Defendants to deliver up and destroy all promotional, advertising

21  and other material bearing the infringing and diluting designations, and to take down its Internet

22  website located at www.brewskeeball.com.

23        5.   For an Order directing Defendants, and each of them, to pay to Plaintiff damages arising

24  from Defendants' trademark infringement, false designation of origin and unfair competition, such

25  damages to be trebled in view of Defendants' willful, knowing and intentional acts in using Plaintiff's

26  Mark.

27        6.   For an Order directing Defendants to pay Plaintiff damages, including but not limited to

28  all gain, profit or advantage derived by Defendants, and each of them, for their unlawful trademark

1  infringement activities described herein, in an amount believed to be in excess of One Million Dollars

2  ($1,000,000.00), the full amount to be determined at trial.

3      7.      That Plaintiff recover attorneys' fees and costs of suit incurred herein; and

4      8.      That Plaintiff has such other and further relief as this Court deems just and proper.

5

6  Dated: October 5, 2011                    IDELL & SEITEL LLP

7

8                                  By:   _____

9                                        Richard J. Idell
                                         Owen Seitel
10                                       Elizabeth J. Rest
                                         *Attorneys for Plaintiff Skee Ball, Inc., a Pennsylvania*
11                                       *corporation*

12
                                **DEMAND FOR JURY TRIAL**
13

14          The Plaintiff hereby demands a trial by jury in the above matter.

15  Dated: October 5, 2011                    IDELL & SEITEL LLP

16

17                                 By:   _____

18                                       Richard J. Idell
                                         Owen Seitel
19                                       Elizabeth J. Rest
                                         *Attorneys for Plaintiff Skee Ball, Inc., a Pennsylvania*
20                                       *corporation*

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES