**SEDGWICK LLP**
Robert M. Harkins, Jr. (State Bar No. 179525)
Jennifer Ming (State Bar No. 260367)
333 Bush Street, 30th Floor
San Francisco, CA  94104-2834
Telephone:     415.781.7900
Facsimile:     415.781.2635

Attorneys for Defendant
FULL CIRCLE UNITED, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKEE BALL, INC., a Pennsylvania corporation, | ) **CASE NO. 3:11-cv-4930-EDL** |
| | ) |
| Plaintiff, | ) **FULL CIRCLE UNITED, LLC'S** |
| | ) **MOTION TO DISMISS OR TRANSFER** |
| v. | ) |
| | ) Date:        December 20, 2011 |
| FULL CIRCLE UNITED, LLC, a New York company, | ) Time:        9:00 a.m. |
| | ) Crtrm:       E, 15th Floor |
| Defendant. | ) Judge:       Mag. Elizabeth D. Laporte |
| | ) |

Sedgwick LLP

SF/2592877v1

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ...........................................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................3

III.    THE COURT SHOULD DISMISS THE COMPLAINT IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION..........................................................5

        A.      The Complaint Fails to Set Forth a Legitimate Basis for Bringing Suit in This District........................................................................................................5

        B.      The Allegations of the Complaint Are Intertwined with a Contract that Sets Venue in New York, and the Case Should Be Dismissed in Favor of the Lawsuit Now Pending in New York...................................................................7

                1.      The Court Should Dismiss The Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(3) ...............................................................7

                2.      The Parties Agreed that Related Disputes Must Be Litigated in New York...............................................................................................7

        C.      The Court Should Find that It Lacks Personal Jurisdiction Over Full Circle. .........8

                1.      Full Circle Does Not Meet the Legal Test for Personal Jurisdiction in the Northern District of California...................................................8

                2.      The Facts Alleged As a Basis for the Complaint Do Not Meet the Personal Jurisdiction Test. ..................................................................9

        D.      The Court Should Find that This Is An Improper Venue for the Case. .................10

IV.     ALTERNATIVELY, THE CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a). ..11

        A.      The Court Has Discretionary Authority To Transfer This Case To The Eastern District of New York ...........................................................................11

        B.      The Interests Of Justice And Convenience Of The Parties And Witnesses Compel A Transfer Of This Action To The Eastern District of New York ...............................................................................................12

        C.      Convenience and the Interests of Justice Compel a Transfer to the Eastern District of New York ...........................................................................12

                1.      Convenience of the Parties..............................................................13

                2.      Convenience of the Witnesses ........................................................13

                3.      The Interests of Justice Favor the Transfer.................................14

V.      CONCLUSION..............................................................................................17

Sedgwick LLP

1

TABLE OF AUTHORITIES

PAGE

2

3 **Cases**

4 *Adobe Sys. Inc. v. Childers*
    2011 U.S. Dist. LEXIS 14534, at *8 (N.D. Cal. Feb. 14, 2011) ............................................. 10

5 *Am.* Tel. *& Tel. Co. v. Compagnie Bruxelles Lambert*
    94 F.3d 586 (9th Cir. 1996) .................................................................................................... 8

6 *Argueta v. Banco Mexicano*, S.A.
    87 F.3d 320 (9th Cir. 1996) .................................................................................................... 7

7 Commodity *Futures Trading Commission v. Savage*
    611 F.2d 270 (9th Cir. 1979) ................................................................................................ 12

8 *Decker Coal Co. v. Commonwealth Edison Co.*
    805 F.2d 834 (9th Cir. 1986) ........................................................................................... 11, 12

9 *Doe 1 v. AOL LLC*
    552 F.3d 1077 (9th Cir. 2009) ................................................................................................ 7

10 Facebook*, Inc. v. Teachbook.com, LLC*
    2011 U.S. Dist. LEXIS 48590 (N.D. Cal. May 2, 2011) ......................................................... 9

11 Garvey *v. Piper Rudnick LLP Long Term Disability Ins. Plan*
    2008 U.S. Dist. LEXIS 120458, *7-*8 (D. Or. Jan. 3, 2008) ................................................. 11

12 Gulf *Oil Corp. v. Gilbert*
    330 U.S. 501, 67 S. Ct. 839 (1947) ....................................................................................... 11

13 Hatch *v. Reliance Ins. Co.*
    758 F.2d 409 (9th Cir. 1985) ................................................................................................ 12

14 Helicopteros *Nacionales de Colombia, S.A. v. Hall*
    466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ....................................................... 8

15 *In re Volkswagen of America, Inc.*
    506 F3d 376 (5th Cir. 2007) ................................................................................................. 14

16 Inherent.*com v. Martindale-Hubbell*
    420 F.Supp.2d 1093 (N.D.Cal. 2006) ................................................................................... 12

17 *Int'l. Shoe Co. v. Wash.*
    326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) .................................................................. 8

18 Jones *v. GNC Franchising*
    211 F.3d 495 (9th Cir. 2000) ..................................................................................... 11, 12, 14

19 *Jumara v. State Farm Ins. Co.*
    55 F.3d 873 (3d Cir. 1995) ................................................................................................... 11

20 Kukje *Hwajae Ins. Co. v. M/V Hyundai Liberty*
    408 F.3d 1250 (9th Cir. 2005) ................................................................................................ 7

21 Love *v. Associated Newspapers, Ltd*.
    611 F.3d 601 (9th Cir. 2010) .................................................................................................. 9

22 Manetti-*Farrow, Inc. v. Gucci America, Inc.*
    858 F.2d 509 (9th Cir. 1988) .................................................................................................. 7

23 Morales *v. Navieras de Puerto Rico*
    713 F. Supp. 711 (D.N.Y. 1989) .................................................................................... 13, 14

Sedgwick LLP

*New Image, Inc. v. Travelers Indem. Co.*
    536 F.Supp. 478 (E.D.Pa. 1981) ............................................................... 15

O'Hopp *v. Contifinancial Corp*
    88 F.Supp.2d 31 (E.D.N.Y. 2000) .............................................................. 16

Pacific *Car and Foundry Co. v. Pence*
    403 F.2d 949 (9th Cir. 1968) ..................................................................... 15

Reiffin *v. Microsoft Corp.*
    104 F.Supp.2d 48 (D.D.C. 2000) ............................................................... 16

Schwarzenegger *v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) ................................................................... 8, 9

*Securities Investor Protection Corp. v. Vigman*
    764 F.2d 1309 (9th Cir. 1985) ................................................................... 15

Silver *Valley Partners, LLC v. De Motte*
    2006 U.S. Dist. LEXIS 67745, *4-*5 (W.D. Wash. Sept. 21, 2006) ...................... 11

Ventress *v. Japan Airlines*
    486 F.2d 1111 (9th Cir. 2007) .................................................................. 12

Williams *v. Granite Constr. Co.*
    2009 U.S. Dist. Lexis 10756 at * 1-2 (N.D.Cal. 2009) .................................. 13

Zimpelman *v. Progressive Northern Ins. Co.*
    2010 U.S. Dist. LEXIS 5582, *7 (N.D. Cal. Jan. 8, 2010) .............................. 15

**Statutes**

28 U.S.C. § 1404 ................................................................... 10, 11, 12, 14

28 U.S.C. § 1406 ........................................................................................ 5

**Rules**

Cal. Code Civ. Proc. § 410.10 ................................................................... 8

TO PLAINTIFF  AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2011 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Defendant Full Circle United, LLC shall and hereby does move the Court for an order dismissing this complaint, or, in the alternative, transferring the action to the United States District Court for the Eastern District of New York, where venue is proper. This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declarations of Eric Pavony and Robert Harkins including exhibits thereto; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

DATED:  November 9, 2011          SEDGWICK LLP

By:/s/ Robert Harkins
    Robert Harkins
    Attorneys for Defendant FULL CIRCLE
    UNITED, LLC

1

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A cursory review of the caption of the Complaint in this case immediately reveals that this case does not belong in the Northern District of California.  Skee Ball, Inc. ("SBI"), a **Pennsylvania** corporation, is suing Full Circle United, LLC ("Full Circle") a **New York** limited liability company.  There are no California plaintiffs or defendants.

The choice of venue here constitutes nothing more than forum shopping used as a bullying tactic.  Full Circle is a small company run by two young entrepreneurs in Brooklyn, New York.  The company has one location in Brooklyn and no locations anywhere else. These facts were known to SBI when it filed the complaint, as Full Circle and SBI have communicated with each other multiple times over the years, beginning in 2005 when the owners of Full Circle met with SBI's CEO and discussed their new Brewskee-Ball league idea, and SBI's CEO told them SBI had no objection.  Now, evidently having changed its mind about its support of Full Circle's league, SBI apparently hoped to intimidate the smaller company by filing suit all the way across the country, increasing cost to Full Circle and making it more difficult and expensive for Full Circle to defend itself.  Full Circle is not subject to personal jurisdiction in this district, and venue certainly is not proper.

The complaint also violates an agreement between SBI and Full Circle.  The companies entered a written agreement to explore working together, and by the terms of the agreement, any disputes related to the agreement had to be brought in court in New York.  Full Circle believes that SBI is in material breach of that agreement, and has filed an action in the Eastern District of New York, as it must.  The facts related to that case relate to this action as well.

Thus, this case should be dismissed for lack of personal jurisdiction and for improper venue, or at least transferred to the Eastern District of New York, where the defendant resides, the location to which SBI's registration for "SKEE BALL" issued (the trademark SBI asserts in this case), the location to which Full Circle's BREWSKEE-BALL® trademark issued (the trademark SBI seeks to cancel), the headquarters of the skee-ball league about which SBI now complains, and the location the parties agreed to litigate disputes related to their agreement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Skee-ball is a type of arcade game with a flat surface bounded on two sides, leading to a ramp.  Beyond the ramp are holes associated with point values.  A player rolls a ball toward the ramp in an attempt to cause the ball to become airborne and land in one of the holes. According to SBI, the skee-ball game has been in existence for more than 100 years.  (*See* Exhibit 1 to the Declaration of Robert Harkins [hereinafter "Harkins Decl."] [statement of SBI CEO Joseph Sladek from SBI's website].) Different companies manufactured skee-ball machines over the years and continue to manufacture them, including SBI, the plaintiff in this action. (*See, e.g.,* Harkins Decl., Exh. 2.) Traditionally, skee-ball has been considered a game played by children, particularly because skee-ball machines in arcades reward the user with paper tickets that arcades allow players to trade for toys appealing to children. (*See* Harkins Decl., Exh. 3.)

In 2005, two young entrepreneurs, Eric Pavony and Evan Tobias, had an idea.  They thought they could introduce skee-ball it into an adult setting, specifically bars, and making the game more fun for adults by employing a league play format. (*See* Declaration of Eric Pavony [hereinafter "Pavony Decl."], ¶ 2.)   They took their idea to SBI and had a meeting with Joseph Sladek, SBI's CEO, at his office in Pennsylvania.  (Pavony Decl., ¶ 3.) During the meeting, Messrs. Pavony and Tobias told Mr. Sladek their idea. (*Id.*)  He told them that SBI was a manufacturer and wasn't in the business of skee-ball leagues, but told them SBI had no problem with them pursuing their Brewskee-Ball league. (*Id.*)

Based on SBI's representations, Full Circle pursued its Brewskee-Ball league and obtained a federal trademark for BREWSKEE-BALL® to avoid confusion with imitators forming their own skee-ball leagues. (*Id., ¶* 4; *see also* Complaint, Exh. B.)  Full Circle has never manufactured skee-ball machines and only used machines it manufactured by SBI.  (Pavony Decl., ¶ 4.) The companies were not competitors.

Due in large measure on Full Circle's efforts, skee-ball became more popular as a sport and source of entertainment for adults. SBI contacted Full Circle to discuss benefits of the two companies working together. (Pavony Decl., ¶ 5.) The parties entered a confidentiality agreement so that Full Circle could be protected when it divulged its plans to SBI to see if they could work

Sedgwick

1  together. The written agreement was executed by both sides and was effective as of March 9,

2  2010. (*See* Pavony Decl., ¶ 6 & Exh. 1.) The agreement has a venue provision that states that

3  relevant disputes between the companies must be litigated in New York. (*See id.*)

4        Per the terms of that agreement, Full Circle provided confidential information, only to

5  then be hit with a cease and desist letter from counsel for SBI dated April 16, 2010. (*See* Exhibit

6  G to Complaint.)  The letter itself references the confidential discussions.  (*Id.*)  Subsequently,

7  however, a representative told Full Circle it could disregard the letter.  However, a year later,

8  counsel for SBI sent a second cease and desist letter dated July 6, 2011. (*See* Exhibit H to

9  Complaint.)  Counsel for Full Circle responded to the letter. (*See* Harkins Decl., Exh. 4.)

10        Then, on October 5, 2011, SBI filed suit against Full Circle, not in New York, where Full

11  Circle is located, nor in Pennsylvania, where SBI is located, but in San Francisco, all the way

12  across the country from both companies. (See Complaint, p. 1.) It became clear to Full Circle

13  that SBI, upon obtaining Full Circle confidential information, decided to breach the agreement,

14  threaten Full Circle, and then obtain the benefit of Full Circle's plans exclusively for itself.  This

15  was all the more galling because SBI based its suit on the idea that SBI owned the name "skee-

16  ball," which for many decades has been the generic name for the skee-ball game.  In arcades, one

17  finds videogames, pinball games, skee-ball games, and air hockey games.  To the extent SBI

18  previously obtained a trademark for the term "skee-ball" in the 1920s, the name long ago became

19  generic and unenforceable.  The Patent and Trademark Office itself recognized this fact when it

20  **<u>required</u>** Full Circle to describe its BREWSKEE-BALL® trademark as related to the category

21  of games known as skee-ball games. (*See* Harkins Decl., Exh. 5.) The instant suit, asserting an

22  invalid trademark in a forum selected across the country from both parties and seeking to cancel

23  Full Circle's legitimate trademark, is nothing more than an attempt by a bigger company to

24  employ improper tactics, including forum shopping, to intimidate a small company.

25        On November 8, 2011, Full Circle filed a lawsuit for breach of contract as well related to

26  SBI's improper conduct, as well as to obtain an order cancelling the trademark registration for

27  "SKEE-BALL," a declaration that Full Circle's actions including any use of the term "skee-ball"

28  to describe the game or its league and its BREWSKEE-BALL® trademark do not infringe any

SBI trademark, breach of the covenant of good faith and fair dealing, unfair business practices, and antitrust violations; the complaint was filed in New York as was required by the terms of the agreement. (*See* Harkins Decl., Exh. 6.)  Full Circle now moves for this Court to dismiss the instant suit in favor of that one, which is located where the parties agreed and where such a dispute belongs.  In the alternative, Full Circle asks the Court to transfer the action to the Eastern District of New York to be consolidated with the other lawsuit.

## III.   THE COURT SHOULD DISMISS THE COMPLAINT IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION

Rule 12(b) of the Federal Rules of Civil Procedure states that "a party may assert the following defenses by motion: … (2) lack of personal jurisdiction; (3) improper venue."  The Court is further authorized to dismiss an action by statute: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

In this case, while it is true the parties have a dispute that relates to their trademarks, that dispute is bound up in a dispute over breach of contract they have with each other than includes a New York forum selection clause.  In such cases, dismissal is proper under Rule 12(b)(3).  Additionally, dismissal is proper under both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue related to Full Circle's lack of activities in this district.

## A.   The Complaint Fails to Set Forth a Legitimate Basis for Bringing Suit in This District.

There is no good reason for this lawsuit to have been brought in the Northern District of California.  As apparent from the fact of the Complaint, no parties are from this district or even from this state.  The dispute is brought by SBI, a Pennsylvania company that asserts trademark infringement and related claims.  But those claims would be proper only in the state where the defendant resides and is performing the acts for which trademark infringement is alleged—New York—or the jurisdiction where the company might be injured by such alleged infringement—

SBI's state of Pennsylvania.  Additionally, the primary claim brought in this action is to cancel Full Circle's registered BREWSKEE-BALL® trademark, and the location of the office from which that trademark was registered is in Brooklyn, New York.  (*See* Complaint, ¶ 17 & Exh. B.) The owners of Full Circle, as alleged in the complaint, both also reside in Brooklyn, New York, and not this district.  (Pavony Decl., ¶ 7.)

The complaint alleges as a basis for venue that Full Circle's skee-ball league lists several cities as included, one of them being San Francisco. (*See* Complaint, ¶¶ 20-21 & Exh. C-F.) However, it is also clear from the exhibits that Full Circle is based in Brooklyn, not San Francisco. (*See id.*) The fact that other bars not owned by Full Circle may participate in the league does not mean those locations are proper for the suit.  Moreover, there is no more reason for this suit being in San Francisco than any other city listed in the league, such as Austin, Texas or Wilmington, North Carolina.  Rather, what is clear from the website is that if others want to join the Brewskee-Ball league, they need to contact Full Circle in Brooklyn, New York. (*See id*.)

There is no evidence that Full Circle has any offices or locations of its own in San Francisco.  In reality, Full Circle has no offices or employees in California at all.  Full Circle's only office is in Brooklyn, New York, and this is also the only location of any of its employees. (Pavony Decl., ¶ 7.)  Beyond this, Full Circle does not derive any licensing revenue from California for Brewskee-Ball®. (*Id.*)

Furthermore, the complaint does not allege that the plaintiff has any offices or employees in this district or even this state either, or has any reason why it is suffering particular harm in this district or state.  On the contrary, SBI's website lists only one location, in Pennsylvania. (Harkins Decl., Exh. 7.)  Instead, the filing of this lawsuit appears to be nothing more than a calculated exercise in forum shopping.  The case should be dismissed from this venue.

///

///

///

///

///

**B.**     **The Allegations of the Complaint Are Intertwined with a Contract that Sets Venue in New York, and the Case Should Be Dismissed in Favor of the Lawsuit Now Pending in New York.**

        **1.**     **The Court Should Dismiss The Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(3)**

A motion to dismiss for improper venue based on a forum selection clause is properly based on Rule 12(b)(3). *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty,* 408 F.3d 1250, 1254 (9th Cir. 2005); *Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 324 (9th Cir. 1996). To assess the motion, the pleadings need not be accepted as true and the court can consider facts outside of the pleadings. *Id.*

Federal common law applies to forum clauses in contracts.  See *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) ("We apply federal law to the interpretation of the forum selection clause."); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses").

        **2.**     **The Parties Agreed that Related Disputes Must Be Litigated in New York**

Here, SBI's Complaint alleges trademark infringement and unfair competition.  What it fails to note is that prior to filing this complaint or sending a cease and desist letter, and with a long history of full knowledge and consent to Full Circle's activities, SBI entered a written agreement with Full Circle to explore the possibility of joint development for skee-ball-related commercial activities. (Pavony Decl., ¶ 6 & Exh. 1.) The agreement has a venue provision that states that relevant disputes between the companies must be litigated in New York. (*Id.*)  The agreement was signed by Full Circle in Brooklyn, New York, and by SBI in Pennsylvania, not in California. (*Id.*) After Full Circle began to provide SBI with its confidential information under the supposed protection of the agreement, SBI improperly used that information.  SBI has materially breached its agreement with Full Circle, and, pursuant to its terms, Full Circle has filed an action in the Eastern District of New York.  The same facts that would be at issue in this

Sedgwick LLP

case are at issue in that case, including SBI's waiver of any claim of trademark infringement against Full Circle and its actions collaterally stopping it from pursuing claims against Full Circle, among others.  As a result, although in its attempt to forum shop SBI carefully omitted reference to the agreement, the agreement and related lawsuit require this suit to be dismissed in favor of the one now pending in New York or transferred there.

**C.     The Court Should Find that It Lacks Personal Jurisdiction Over Full Circle.**

> **1.     Full Circle Does Not Meet the Legal Test for Personal Jurisdiction in the Northern District of California.**

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  California's long-arm statute authorizes the exercise of jurisdiction on any basis not inconsistent with the state or federal Constitutions. Cal. Code Civ. Proc. § 410.10. As such, the analysis of personal jurisdiction collapses into a single inquiry under federal due process.

Here, Plaintiff SBI has the burden of establishing the existence of jurisdiction. "In determining whether [plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts . . . must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted).

Although personal jurisdiction may be either general or specific, here the complaint does not include any allegations of general jurisdiction.  On the contrary, the complaint notes that Full Circle has one office, in Brooklyn, New York.  Instead, the complaint relies upon purported specific jurisdiction, which requires that the suit arises out of or is related to Full Circle's contacts with the California. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

Sedgwick LLP

The Ninth Circuit applies a three-element test for analyzing claims of specific

jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.   Under this test, Full Circle is not subject to personal

jurisdiction in this district.

## 2.   The Facts Alleged As a Basis for the Complaint Do Not Meet the Personal Jurisdiction Test.

The Complaint does not establish personal jurisdiction over Full Circle.  In the first

instance, there is no purposeful availment as required in the first prong of the test under

*Schwarzenegger.*  The acts complained of originate in New York and are not particularly

directed toward the plaintiff in California.  In such a case, "[b]ecause the defendant did not

purposefully direct any of the relevant intentional acts at California, it was not subject to the

jurisdiction of a court in that state." *Facebook, Inc. v. Teachbook.com, LLC*, 2011 U.S. Dist.

LEXIS 48590 (N.D. Cal. May 2, 2011) (Whyte, J.) (*quoting Love v. Associated Newspapers,

Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010)).  In *Teachbook.com,* the plaintiff was a Company

headquartered in this district, and yet the court held that a website alleged to have a confusingly

similar name was held not to bring the defendant within the personal jurisdiction of the court

because the activities were not sufficiently aimed at the forum. *See id.*

Here, the facts similarly show that Full Circle is not subject to personal jurisdiction in this

district.  Full Circle does not make or sell skee-ball machines. (Pavony Decl., ¶ 4.)  It has no

ownership interest in the bar that is part of its league in San Francisco and it does not receive any

licensing fees from use of its trademark in California. (*Id.,* ¶ 7.)  Its website is passive—it does

not sell products via the Internet.  (*Id.,* ¶ 7.)  Thus, it is not purposefully availing itself of the

Sedgwick LLP

1    jurisdiction. Furthermore, the actions alleged in the complaint, the main one being obtaining

2    registration for the BREWSKEE-BALL® mark in Brooklyn, running a league in Brooklyn, and

3    putting up a website in Brooklyn, do not relate to California-related activities.  Thus, the

4    Complaint does not establish personal jurisdiction under the first two elements.

5            Additionally, were any tentative connection between Full Circle and California found

6    sufficient to meet the first two elements, exercise of such jurisdiction would not meet the last

7    element because it would not comport with fair play and substantial justice.  Full Circle is a

8    small business with only one location in Brooklyn, New York.  (Pavony Decl., ¶ 7.)  It does not

9    have substantial resources to defend itself throughout a federal lawsuit across the country from

10   where it is located, and it would be a heavy financial burden for the company to have its witness

11   travel to California for trial. (*Id.*, ¶ 8.)  Moreover, there is no reason for it to do so, as the plaintiff

12   is not located here either, but instead is only a car ride away in Eastern Pennsylvania.

13   Substantial justice would be met only by having the case located near the parties. Therefore, the

14   Court should find that there is no personal jurisdiction over Full Circle and dismiss the

15   Complaint.

16
17   **D.     The Court Should Find that This Is An Improper Venue for the Case.**

18           Were SBI to meet its jurisdictional burden, the case would nonetheless be subject to

19   dismiss for improper venue under Rule 12(b)(3) unless SBI could prove that Full Circle

20   "entered" this district in a way that would create confusion for plaintiff's customers. *See Adobe*

21   *Sys. Inc. v. Childers*, 2011 U.S. Dist. LEXIS 14534, at *8 (N.D. Cal. Feb. 14, 2011) (Fogel, J.).

22   As discussed above, Full Circle does not have any locations or employees in California.  Its use

23   of its trademark is in Brooklyn, New York, where the Full Circle bar is located.  Its activities

24   were directed to New York, and, to the extent SBI now believes the use of the mark

25   BREWSKEE-BALL® infringes, that stems from New York and could possibly be seen as being

26   related to Pennsylvania, where SBI is.  Nothing gives California a special interest in this dispute,

27   and Full Circle's actions are not particularly directed to his state.

28

Sedgwick

**IV.   ALTERNATIVELY, THE CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a).**

**A.   The Court Has Discretionary Authority To Transfer This Case To The Eastern District of New York**

If it serves the convenience of the parties and witnesses, and if it is consistent with the interests of justice, a court may, in its discretion, transfer an action to any district where the case could have originally been filed.  28 U.S.C. § 1404(a).  Section 1404(a) provides:  "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In ruling on a motion to transfer, a district court must consider each of the factors enumerated in section 1404(a):  convenience of the parties and witnesses; the relative ease of access to sources of proof; the availability of process to compel the presence of unwilling witnesses; the practical problems indicating that the case can be tried more expeditiously and inexpensively elsewhere; and the interests of justice.  *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 2008 U.S. Dist. LEXIS 120458, *7-*8 (D. Or. Jan. 3, 2008), *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S. Ct. 839 (1947).

> In deciding whether to transfer on grounds of convenience and in the interest of justice, the Court considers eight factors:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Silver Valley Partners, LLC v. De Motte,* 2006 U.S. Dist. LEXIS 67745, *4-*5 (W.D. Wash. Sept. 21, 2006) (citing *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000)). The Ninth Circle also considers the presence of a forum selection clause. See *Jones*, at 499. Courts have also considered the relative docket congestion of the transferor and transferee courts. *See, e.g., Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir. 1995).

For the reasons discussed below, the Court should exercise its discretion and transfer this case to the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a).

**B.      The Interests Of Justice And Convenience Of The Parties And Witnesses Compel A Transfer Of This Action To The Eastern District of New York**

A party moving to transfer venue must make a preliminary showing that jurisdiction and proper venue would exist in the district to which a transfer is requested.  *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 278-279 (9th Cir. 1979).  Under 28 U.S.C. § 1404(a), an action may be transferred only to a district in which "it could have been brought."  The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness."  *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1098 (N.D.Cal. 2006), *citing Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000)).

Here, the Eastern District of New York is an appropriate venue for a dispute between Full Circle, a New York company, and SBI, a Pennsylvania company.  This contrasts distinctly with the Northern District of California, a venue where neither party resides.  SBI alleges in its complaint that it resides in Pennsylvania and that Full Circle resides in Brooklyn, New York.  (Complaint, p. 1 & ¶ 5.)  Thus, the first and second element of the section 1132(e)(2) analysis permits transfer to the Eastern District of New York.

**C.      Convenience and the Interests of Justice Compel a Transfer to the Eastern District of New York**

28 U.S.C. § 1404(a) identifies three general factors to guide the district court in exercising its discretion to transfer a case:  the convenience of the parties, the convenience of the witnesses, and the interests of justice.  "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."  *Ventress v. Japan Airlines,* 486 F.2d 1111, 1118 (9th Cir. 2007), *citing Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  Further, as discussed above, a court ruling on a motion to transfer also may consider judicial economy, relative ease of access to proof, availability of compulsory process, and relative docket congestion.  *Decker Coal Co. v.*

*Commonwealth Edison Co., supra*, 805 F. 3d at 843.  Application of these factors mandates an order transferring the action to the Eastern District of New York.

### 1.    Convenience of the Parties

Because plaintiff is based in Pennsylvania, it cannot argue that the Northern District of California is a more convenient forum for it.  *See Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 173 (D.N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico he does not, nor can he, seriously argue that New York is a more convenient forum than Puerto Rico, especially when none of the operative facts occurred in New York, but rather occurred in Puerto Rico.").  The fact that the Northern District of California may be convenient to plaintiff's counsel, who maintains a law office in this district, is not relevant.  "[T]he convenience of the parties' counsel is given little or no weight in the convenience analysis."  17 Moore's Federal Practice, sec. 111.13[e][iii]; *see also, Williams v. Granite Constr. Co.* 2009 U.S. Dist. Lexis 10756 at * 1-2 (N.D.Cal. 2009).

Transfer to the Eastern District of New York would be significantly more convenient for Full Circle, as it is headquartered and has its only office there.  It would also be more convenient for SB, as Pennsylvania is a neighboring state to New York and over 2,000 miles closer to the Eastern District of New York that the Northern District of California.

### 2.    Convenience of the Witnesses

The relevant witnesses are located in the Eastern District of New York or in neighboring Pennsylvania:

- Full Circle was and always has been a New York limited liability company based in Brooklyn, NY (Pavony Decl., ¶ 7);

- The two individuals referenced by name in the complaint, Eric Pavony and Evan Tobias, reside in New York (*Id.*);

- The trademark that SBI seeks to cancel was issued to Full Circle in Brooklyn, NY (Complaint, Exh. B);

- Full Circle's records reside in Brooklyn, NY (Pavony Decl., ¶ 7);

- With respect to SBI, its trademark registration was originally also to the Eastern

District of New York, and subsequently was assigned to company in Eastern Pennsylvania, a short distance away from neighboring New York (Complaint, Exh. A);

- SB employees who are witnesses in this case also work in Pennsylvania, including SBI's CEO Joseph Sladek (*See* Harkins Decl., Exh. 7 [only SBI location is in Pennsylvania]);

- The complaint does not allege that SBI has any offices or records in California, and these, too, are presumably in Pennsylvania;

- The communications between Full Circle and SB, and in particular with SB's CEO, occurred between Brooklyn, NY and Pennsylvania (*see* Pavony Decl., ¶¶ 3-7).

### 3.     The Interests of Justice Favor the Transfer

The equitable factors identified by the Ninth Circuit in *Jones v. GNC Franchising, supra*, 211 F.3d 495, 498, also favor transfer of the case.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen of America, Inc.* 506 F3d 376, 386 (5th Cir. 2007). Transfer will effect judicial economy and prevent waste of time and money.

#### a)     Lack of contacts with the Northern District of California

"A primary factor in determining a section 1404(a) motion to transfer is where the operative facts occurred."  *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 (S.D.N.Y. 1989).  Here,  the league about which SBI complains was founded in the Eastern District of New York and has been run exclusively from that district.   It the same district to which **both** trademark registrations in this case issued.   It is where Full Circle is based and acted from, including all actions discussed in the Complaint.  In short, the operative facts – indeed all events – occurred in the Eastern District of New York.  This factor weighs heavily in favor of transfer.

**b)**     **No deference should be given to Plaintiff's choice of forum**

Some courts have held that a plaintiff's choice of forum is accorded substantial weight in proceedings under section 1404(a).  *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).  However, deference to plaintiff's choice of forum is "substantially attenuated" where plaintiff has commenced the action in a forum that is not his or her residence.  In such cases, plaintiff's choice of forum is given much less weight in ruling on a discretionary transfer motion.  *New Image, Inc. v. Travelers Indem. Co.*, 536 F.Supp. 478 (E.D.Pa. 1981).  Here, plaintiff is a resident of Pennsylvania, not the Northern District of California.  SB never resided or even had any offices in this district during the relevant time period alleged in the complaint.  As a result, the plaintiff's forum choice in the Northern District of California carries no weight on whether to transfer the action.

> In judging the weight to be given [to plaintiff's choice of forum] ... consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to [plaintiff's] cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is only entitled to minimal consideration.

*Zimpelman v. Progressive Northern Ins. Co.*, 2010 U.S. Dist. LEXIS 5582, *7 (N.D. Cal. Jan. 8, 2010), *citing Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  None of the operative facts occurred in the Northern District of California; thus, this district has no interest in the subject matter of the complaint.

SBI may assert that it formed a California connection when it hired a marketing company in California named Dimensional Branding Group to promote its brand.  However, the actions of Dimensional Branding create no such connection for this case.  The allegations of the complaint relate to cancelation of the BREWSKEE-BALL® mark registration based on facts that have nothing to do with SBI's marketing company.  The Complaint also relates to allegations of Full Circle's use of the BREWSKEE-BALL® mark and its skee-ball league, which are based in New York, not California.   To the extent employees of Dimensional Branding Group had communications with Full Circle, those may relate to Full Circle's complaint for breach of

Sedgwick LLP

1   contract, already pending in New York per the express terms of the agreement, but they do not

2   relate to the purported trademark infringement. Whether or not Full Circle used its own mark or

3   used SBI's purported mark, whether SBI has any rights to enforce in the name "skee-ball," and

4   whether SBI gave permission for Full Circle's actions, all relate to actions and communications

5   that occurred in New York and Pennsylvania, not California.  Thus, this district is no more than

6   "substantially attenuated" to the claims in the Complaint, and relevant authority supports transfer

7   in such cases to a forum with more direct involvement.

8              **c)**       **Plaintiff's attempt to forum shop should not succeed**

9         An important "interest of justice" factor is the prevention of forum shopping.  The

10   transfer statute has a built-in mechanism to remedy the evils of forum shopping by giving little or

11   no weight to the plaintiff's choice of forum away from the plaintiff's home and without ties to

12   the controversy.  *See, O'Hopp v. Contifinancial Corp*, 88 F.Supp.2d 31, 36 (E.D.N.Y. 2000)

13   (holding that forum shopping clearly motivated the choice of filing the suit in the Eastern

14   District, because the case had far more connections to the Southern District; and that the need for

15   consistency of rulings and trial coordination, as well as the interest of efficiency and justice,

16   militated in favor of transfer); *see also Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 54, fn. 12

17   (D.D.C. 2000) (choice of venue disregarded when it was apparent plaintiff was engaged in forum

18   shopping and the alternative venue was equally convenient).

19         SBI should not be permitted to forum shop here, where the Northern District of

20   California is far away from the matters giving rise to the dispute, and the offices of both parties

21   are all the way across the country from this district.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Sedgwick LLP

## V.  CONCLUSION

Based on the foregoing, Full Circle respectfully requests that the Court dismiss this action or transfer it to the Eastern District of New York, where the majority of acts underlying this litigation occurred as well as where a related case is pending.

DATED:  November 9, 2011                SEDGWICK LLP


                                        By: */s/ Robert Harkins*
                                        Robert Harkins
                                        Attorneys for Defendant FULL CIRCLE
                                        UNITED, LLC