**SEDGWICK LLP**
Robert M. Harkins, Jr. (State Bar No. 179525)
Jennifer Ming (State Bar No. 260367)
333 Bush Street, 30th Floor
San Francisco, CA  94104-2834
Telephone:    415.781.7900
Facsimile:    415.781.2635

Attorneys for Defendant
FULL CIRCLE UNITED, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKEE BALL, INC., a Pennsylvania corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>FULL CIRCLE UNITED, LLC, a New York company,<br><br>            Defendant. | **CASE NO. 3:11-cv-4930-EDL**<br><br>**FULL CIRCLE UNITED, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**<br><br>Date:        December 20, 2011<br>Time:        9:30 a.m.<br>Crtrm:      E, 15th Floor<br>Judge:      Mag. Elizabeth D. Laporte |

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ...................................................................................................................1

II. THE CHOICE OF VENUE PROVISION IN THE CONTRACT BETWEEN THE PARTIES MEANS THAT THE DISPUTE MUST BE ADJUDICATED IN NEW YORK .......................................................................................................................................3

III. SBI'S OPPOSITION DOES NOT PROVIDE A BASIS FOR THE CASE TO BE ADJUDICATED IN CALIFORNIA .....................................................................................5

    A. DBG Cannot Serve As a Basis for Jurisdiction or Proper Venue. ...........................6

    B. SBI Has Failed to Show Other Legitimate Bases for Jurisdiction in California. ....9

    C. The Court Should Find that This Is An Improper Venue for the Case. .................10

IV. THE RELEVANT FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFERING THIS CASE TO NEW YORK............................................................................................11

V. CONCLUSION......................................................................................................................14

TABLE OF AUTHORITIES

PAGE

**Cases**

*Adobe Sys. Inc. v. Childers*
 2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011) ......................................................... 11

*Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ........................................... 3

*Facebook, Inc. v. Teachbook.com, LLC*
 2011 U.S. Dist. LEXIS 48590 (N.D. Cal. May 2, 2011) ......................................................... 15

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ........................................................ 3

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987) ................................... 3

*Int'l. Shoe Co. v. Wash.*
 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ..................................................................... 9

*Jones v. GNC Franchising*
 211 F.3d 495 (9th Cir. 2000) .................................................................................................. 12

*Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty,* 408 F.3d 1250 (9th Cir. 2005) ........................... 3

*Radio Systems Corp. v. Accession Inc.,*
 638 F.3d 785 (Fed. Cir. 2011) .................................................................................................. 8

*Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 24 (1st. Cir. 2009) ................................... 3

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) ...................................................... 3

*Schwarzenegger v. Fred Martin Motor Co.*
 374 F.3d 797 (9th Cir. 2004) .................................................................................................... 9

*Silver Valley Partners, LLC v. De Motte*
 2006 U.S. Dist. LEXIS 67745 (W.D. Wash. Sept. 21, 2006) ................................................. 12

*Williams v. Granite Constr. Co.*
 2009 U.S. Dist. Lexis 10756 (N.D.Cal. 2009) ......................................................................... 9

**Statutes**

28 U.S.C. § 1404 ............................................................................................................................ 11

28 U.S.C. § 1406 .............................................................................................................................. 3

**Rules**

Fed. R. Civ. Proc., Rule 12(b)(3) ..................................................................................... 3, 5, 10, 11

I.     INTRODUCTION

Skee Ball, Inc.'s ("SBI's") opposition to Full Circle United, LLC's ("Full Circle's") motion to dismiss or transfer this case to be consolidated with Full Circle's pending lawsuit in the Eastern District of New York is essentially one big red herring, irrelevant to the legal analysis the Court conducts for such a motion. The follow facts are undisputed:

a)   SBI, the sole plaintiff in this action, is a Pennsylvania corporation with no offices in California.

b)   Full Circle, the sole defendant in this action, is a New York company with no offices in California.

c)   The only two parties in this action signed an agreement that included a venue provision that disputes regarding that agreement must be resolved in court in New York (the "New York Agreement," attached to Pavony declaration [Doc. 5-2] as Exh. 1), and Full Circle filed an action for breach of the agreement in the Eastern District of New York pursuant to the terms of that agreement (the "New York lawsuit").

d)   Facts underlying SBI's complaint are intertwined with those in the New York lawsuit.

Under these circumstances, the path for the Court here is clear – this case should be dismissed in favor of the New York lawsuit, or at least transferred to the Eastern District of New York to be consolidated with that case.

Rather than dispute the facts discussed in Full Circle's motion, SBI submits a brief alleging a connection to California based on communications between Full Circle and a different company named Dimensional Branding Group ("DBG"). But DBG is not a party to this action and has no ownership of the trademarks at issue. In its opposition, SBI never even responds to the point made in Full Circle's motion that the DBG communications are irrelevant to SBI's trademark claim and are only relevant to Full Circle's breach of contract claim that must by its terms be adjudicated in New York. Moreover, the submitted declarations from DBG are irrelevant. For SBI's claims, it does not matter how or when **DBG** discovered that Full Circle launched a league and began using the term BREWSKEE-BALL®. At most, it might matter when **SBI** learned of the usage; however, that fact is already in the record and not disputed—Full Circle told SBI's CEO about it in 2005 at SBI's offices in Pennsylvania and SBI permitted it for

many years thereafter. (*See* Pavony Decl. [Doc 5-2], ¶ 3.) Beyond that, communications between Full Circle and DBG have nothing to do with the fact relevant to SBI's claim to cancel Full Circle's BREWSKEE-BALL® trademark, which is based on acts occurring in New York from the registration or posting of a website in New York. SBI's trademark infringement claims similarly recite no particular harm in California to Pennsylvania-based SBI. The communications between Full Circle and SBI (none of which occurred in California) are relevant to defenses against SBI's claims here as well as Full Circle's breach of contract action, but those having nothing to do DBG communications. SBI's decision to hire a California marketing company and attorney are not relevant to where the actions or alleged harm occurred. Were SBI damaged at all (it is not), that damage would have been either where the acts occurred—New York—or where it is based—Pennsylvania—and not in other locations across the country.

SBI does not dispute that New York is a proper venue for this case. On the contrary, the motion and accompanying declarations submitted by SBI admit repeatedly that they knew Full Circle was in New York and that its actions were in New York. DBG's CEO submitted a declaration stating that he met with Full Circle in person only twice, **both times in New York**. (Seidman Decl. [Doc. 10-3], ¶¶ 7-8.) While the parties agree New York is a proper venue, SBI wants the Court to permit its forum-shopping based on its first-to-file status. But that preference does not apply when the parties have a choice-of-venue provision governing a related dispute, as is the case here. Additionally, that preference does not override the transfer factors that all weigh heavily in favor of this case being in New York. Nor do courts give any preference to the first filer when the plaintiff is simply forum-shopping, which is also the case here. In this case, where the Eastern District of New York must retain jurisdiction based on the agreement, there is no reason for duplicative, parallel proceedings. SBI can simply re-file its claims as counterclaims in that action, and indeed the claims asserted in its complaint in this action are compulsory counterclaim in that action anyway. This case should be dismissed.

II. **THE CHOICE OF VENUE PROVISION IN THE CONTRACT BETWEEN THE PARTIES MEANS THAT THE DISPUTE MUST BE ADJUDICATED IN NEW YORK**

As discussed in Full Circle's motion, Rule 12(b)(3) of the Federal Rules of Civil Procedure support dismissal of a case for improper venue when the facts relate to a contract containing a forum selection clause specifying a different location. *See* Mtn Dismiss [Doc. 5], at 7; *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty,* 408 F.3d 1250, 1254 (9th Cir. 2005); *Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 324 (9th Cir. 1996); *see also Hunt Wesson Foods, Inc. v. Supreme Oil Co*., 817 F.2d 75, 77 (9th Cir. 1987); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ("The prevailing rule is clear …that where venue is specified with mandatory language[,] the clause will be enforced"). A case must therefore be dismissed or transferred if filed in an improper venue. *See* Fed. R. Civ. Pro. 12(b)(3); 28 U.S.C. § 1406(a).

Additionally, the scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). Courts extend the forum selection clause to all claims reasonably connected to the contract. *Id*. at 1360. A contractual forum selection clause applies to tort claims if those claims involve the "same operative facts" as a claim for breach of the contract. *See Rivera v. Centro Medico de Turabo, Inc*., 575 F.3d 10, 24 (1st. Cir. 2009); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("where the relationship between the parties is contractual, the pleading of alternative noncontractual theories of liability should not prevent enforcement of such a bargain [as to the choice of forum]").

Here, Full Circle alleges that SBI breached the New York Agreement, and, as required by the terms of that agreement, it filed suit in New York.[1] That suit asserts that SBI has breached the contract and acted in bad faith in its relations with Full Circle, including by wrongfully asserting an invalid trademark and hampering Full Circle's ability to use its own valid trademark.

---

[1] SBI notes several times that Full Circle filed its lawsuit after SBI did. That is true, but Full Circle was required to file its claims in New York under the terms of the New York Agreement. Without the breach of that agreement, Full Circle still would have moved to dismiss or transfer this case to New York, where it belongs, but it would have awaited this Court's ruling prior to filing. Since Full Circle had no choice but to file its case in New York, though, the company believed it would be best to pursue its claims there immediately, which, by having a complete statement for relief on file, would also best inform this Court as to the issues in that case.

The underlying facts and claims are intertwined with SBI's claims.  SBI's own submitted declarations merely present testimony that SBI's agents had discussions with Full Circle under the provisions of that agreement and confirm that a dispute exists as to whether that agreement was breached. As a result, the law is clear that this case should be dismissed or transferred to the forum where the parties agreed to adjudicate their dispute.

SBI does not dispute the existence or validity of this agreement.  It does not dispute that the agreement included a valid forum selection clause.  It does not assert that the agreement or the clause were the result of fraud. Instead, SBI makes two arguments, neither of which has any bearing on whether this suit needs to be dismissed in favor of the New York lawsuit:

(1) SBI asserts that it has not breached the contract.  That is incorrect, and at most merely indicates that the breach of contract claim is factually disputed, which has no legal bearing on the propriety of the venue for adjudication.

(2) SBI asserts that the contract is irrelevant because it is "over."  First, that is demonstrably false.  There is no expiration date in the New York Agreement; it is still pending. (*See* Pavony Decl. [Doc. 5-2], Exh. 1.)  It is possible SBI is incorrectly referring to a separate "no sue" or "forbearance" agreement between the parties, discussed in the declarations of Ms. Moorhead and Mr. Leonhardt—but whether or not that agreement was also violated by SBI, it was not the New York Agreement upon which Full Circle based its complaint.  Pointing to a different agreement with no forum clause simply serves as an irrelevant distraction.

Setting the irrelevant forbearance agreement aside, SBI concedes there is a valid written agreement between SBI and Full Circle with a valid forum-selection clause that it signed.  Its protestations of innocence of breach of that agreement will be adjudicated in New York as the parties agreed.  The law is clear (and SBI cites none to the contrary) that in such a case, the Court is to dismiss this case under Rule 12(b)(3).

In its opposition, SBI appears (whether intentionally or unintentionally) to misread Full Circle's complaint for breach of the New York agreement.  SBI treats the claim as Full Circle The complaint plainly alleges, for example, that "on information and belief, SBI, upon obtaining Full Circle confidential information, decided to breach the agreement, threaten Full Circle, and

then obtain the benefit of Full Circle's business and plans exclusively for itself, in order to illegally assert a monopoly over the generic term 'skee-ball' and, on information and belief, use that asserted monopoly to obtain anticompetitive advantage over Full Circle with respect to Full Circle's current business and future business plans." (Harkins Decl., Exh. 6, at ¶ 20.)  By misusing the information it gained under the agreement, SBI is in breach.  Full Circle has a right to have that claim adjudicated, and it must be adjudicated in New York.

SBI asserts the New York Agreement between the parties is irrelevant, but it is unclear what it is irrelevant to. Obviously it is relevant to the claim of breach of the agreement itself.  It also relates to the communications between Full Circle and SBI regarding Full Circle's plans in the context of the prior communications between the companies, including SBI's express permission for Full Circle to pursue its Brewskee-Ball league.  It even relates to the communications between Full Circle and DBG, who asserts that it acted as an agent of SBI in the negotiations under the New York Agreement.  These are the same communications that SBI asserts are the real reason it filed suit in California.  SBI cannot reasonably argue on one hand that the New York Agreement between SBI and Full Circle and related negotiations are irrelevant to this case, and on other argue that they are highly relevant to this case.  The fact that SBI submitted declarations regarding communications between DBG and Full Circle under the New York Agreement (*see, e.g.,* Leonhardt Decl. [Doc. 10-2], ¶¶ 8-9) shows that the facts underlying the two lawsuits are inherently and inextricably intertwined.  Were they not, SBI would not have any basis to assert jurisdiction in California anyway, since those communications form the purported evidence submitted as to the alleged "California link" to this case.

### III. SBI'S OPPOSITION DOES NOT PROVIDE A BASIS FOR THE CASE TO BE ADJUDICATED IN CALIFORNIA

SBI has a problem in attempting to maintain a basis for this case in California.  The company's alleged trademark rights in the term "skee-ball" are not based in California (SBI has not submitted any California state trademark registration nor any between SBI and the U.S. Patent and Trademark Office that have any connection to California), and the trademark is not registered to a company either in California or even with an office in California.  SBI's

submissions opposing this motion merely verify that SBI itself is not being harmed in California as opposed to anywhere else in the country. SBI is in Pennsylvania. The CEO of SBI is an important witness in the case, but, as attested in a declaration submitted by SBI, he resides in Pennsylvania and works at SBI's only location, which is in Eastern Pennsylvania not far from the defendant in New York. (*See* Seidman Decl. [Doc 10-3], at ¶ 2.) Based on the evidentiary record, it is undisputed that no <u>employee</u> of SBI ever communicated with Full Circle in California; all such communications occurred between New York and Pennsylvania.

Instead, SBI submits two purported bases for filing the lawsuit in California: (1) that DGB, a marketing company SBI purportedly hired, is based in this district, and (2) the national league that SBI concedes is run out of New York lists cities around the country including San Francisco. Neither of these makes San Francisco an appropriate place to try this case.

### A. DBG Cannot Serve As a Basis for Jurisdiction or Proper Venue

Since SBI itself has no basis to maintain this case in California, it pretends that its marketing company can establish some relevant basis for it to sue Full Circle all the way across the country from both parties. It is wrong.

DBG is not a party to this action. DBG has no agreement with Full Circle. DBG has no claim against Full Circle. So the fact that DBG is in the Northern District of California does not serve to create jurisdiction. The communications were about whether **SBI** (in Pennsylvania) and Full Circle (in New York) would work together. The New York Agreement was not between DBG and Full Circle, but rather between SBI and Full Circle, and SBI's CEO signed it in Pennsylvania, agreeing that disputes would be adjudicated in New York.

For jurisdictional purposes, merely talking to people in California is not sufficient to give rise to jurisdiction. With respect to Full Circle's *forum non conveniens* argument, DBG asserts that its employees are witnesses. However, they are not witnesses to the facts alleged in the complaint in this case. The complaint relates to whether Full Circle's use of the term "skee-ball" on its national website and with respect to its national league run out of New York, and whether Full Circle's use of its own registered trademark BREWSKEE-BALL® in the same national

SF/2633528v1

6
FULL CIRCLE UNITED, LLC'S REPLY ISO MOTION TO DISMISS OR TRANSFER

website and league run out of New York infringes any valid rights held by SBI.  The complaint does not allege that DBG has any rights in any relevant trademark.  On the contrary, it alleges the **SBI** is the exclusive owner of all rights in the term "skee-ball." (Complaint [Doc. 1], ¶ 9.)  So the facts at issue relate to whether Full Circle is using the term "skee-ball" – for which DBG employees are not necessary or relevant witnesses – and whether and how Full Circle is using its own BREWSKEE-BALL® mark, which again has no particular relevance to anyone at DBG.

To the extent DBG employees are relevant witnesses, the testimony would relate to DBG's communications with Full Circle on behalf of SBI under the New York Agreement. Since they purportedly acted as agents of SBI in those communications,[2] DBG employees may be relevant witnesses to Full Circle's claim for breach of contract, but that claim by its own terms must be adjudicated in New York and cannot be adjudicated in California.  Beyond that, SBI admits that the only in person meetings with Full Circle took place in New York.  **They never met in California**. (See Seidman Decl. [Doc. 10-3], at ¶¶ 7-8.) Beyond that, the communications themselves show that while Full Circle was aware DBG was in the West, Full Circle employees did not generally travel there and even when asked were never able to make a trip to the West happen.  Instead, Full Circle requested in-person meetings to be in New York or eastern Pennsylvania (See Leonhardt Decl. [Doc. 10-2], Exh. A.)

The plaintiff attempts to establish a connection using sent e-mails sent and phone calls made by DBG to Full Circle (although, at all of those times, they admit Full Circle remained in New York).  But, as discussed above, those communications are irrelevant to the issue of trademark infringement or cancelation.  The DBG declarations contain multiple misstatements of fact, but generally they are irrelevant to the motion at hand, and at their core they establish that while there were some phone calls and e-mails, Full Circle understood those to be by a company representing a Pennsylvania company and not traveling to California.

---

[2] It is actually unclear from the evidentiary record what if any relationship DBG has to SBI in the first place.  Two people associated with DBG asserted without proof that DBG is the "exclusive representative" of SBI regarding its intellectual property, but that is inadmissible, self-serving hearsay.  Curiously, not a single person from SBI itself provided a declaration in opposition to this motion, nor confirmed DBG's purported representative relationship, nor were any documents provided to support that such a representation exists.

Additionally, merely discussing legal rights with a party in a state does not generally give rise to personal jurisdiction over the party. It takes more meaningful and directed contact that that one of the parties negotiating on behalf of someone was doing so from a state for that state to have a judicial interest in the dispute (especially here where the dispute is not even between DBG and Full Circle, but instead between SBI and Full Circle). For example, in *Radio Systems*, the Federal Circuit held in a patent case that merely sending cease-and-desist letters and having discussions with a forum was insufficient to extend personal jurisdiction over a company that was located elsewhere. *See Radio Systems Corp. v. Accession Inc.,* 638 F.3d 785 (Fed. Cir. 2011). The Court found that activities involving the state where the accused party filed suit would not create personal jurisdiction unless they rose to the level of "enforcement or defense activities." In that case, the court held that cease-and-desist notices sent to the forum state were not sufficient to give rise to personal jurisdiction. It concluded that earlier communications between the parties in the forum state were merely efforts to commercialize a product and not enforcement activities. As a result, the Court upheld dismissal of the case for lack of personal jurisdiction over the defendant. The defendant's contacts with the forum state here are much more attenuated that the defendant in *Radio Systems*. The defendant here did not purposefully avail themselves of the forum state any more than anywhere else, and it would not comport with traditional notions of fair play and substantial justice to extend jurisdiction over them based on the evidence. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

SBI submits two additional declarations from people in California, but these declarations are from attorneys representing SBI in this case. The location of these attorneys cannot serve as a basis for jurisdiction. Nor does it have weight in a *forum non conveniens* analysis. 17 Moore's Federal Practice, sec. 111.13[e][iii]; *see also, Williams v. Granite Constr. Co.* 2009 U.S. Dist. Lexis 10756 at *1-*2 (N.D.Cal. 2009). Thus, the declarations of counsel are immaterial to the issues of jurisdiction and venue.

### B. SBI Has Failed to Show Other Legitimate Bases for Jurisdiction in California

SBI's second argument is that it thinks it has found a basis for jurisdiction in this district because San Francisco is listed as one of many places on Full Circle's skee-ball league website. It is true that Full Circle runs a national skee-ball league—it stated this in its motion and in its own complaint in New York—but that does not have any special connection to California. As SBI itself notes, there are many cities nationally listed as participants in the league. That does not change the fact neither Full Circle nor SBI has any offices or employees in California or the fact that Full Circle derives no licensing revenues from California.

Additionally, this is not just a case where the defendant has at most a tenuous connection to the forum state such that jurisdiction and venue are improper. Here, the <u>plaintiff</u> also has at most a tenuous connection to the forum state with respect to this action. SBI would like the Court to ignore that, but it is a key part of the analysis.

Finally, in a desperate attempt to maintain this improper venue, SBI argues that if it has to, it will bring in another defendant to manufacture jurisdiction in California. Then they submit some web print-outs attached to the declaration of Ory Sandel (Doc. 10-2). Exhibit A to the Sandel declaration merely provides evidence that the website that is a basis for this suit is based in Brooklyn in line with what the website itself states (and which Mr. Pavony already stated in his declaration), and the other two exhibits merely provide additional proof that neither Full Circle nor its principals owns a bar in San Francisco. That is consistent with the declaration of Eric Pavony and supports a finding of no jurisdiction.

Second, the idea that SBI will sue another party in California to secure jurisdiction only proves that this is a blatant instance of forum-shopping. There is no reason to drag some local bar into the case, when the claims are only about whether Full Circle's national skee-ball league and national use of the mark BREWSKEE-BALL® damages SBI. Beyond this, it is not at all clear that the additional SBI says it intends to sue have anything to do with the facts of this case. Exhibit B to the Sandel declaration indicates that the BREWSKEE-BALL® website refers to a San Francisco bar called "Buckshot Bar." Exhibit C to the declaration relates to a company

named "3 Styles LLC" based in Los Angeles and says nothing about a bar named Buckshot Bar. Exhibit D relates to a bar owned by 3 Styles LLC named "Alpha Bar & Lounge," not a bar named Buckshot Bar. This half-hearted "investigation" shows nothing more than that SBI is committed to dragging Full Circle across the country and will try to involve irrelevant third parties into the lawsuit just to manufacture jurisdiction if necessary to succeed in its forum-shopping. If that bar or witnesses were relevant to the case, SBI could and should have performed a proper pre-suit investigation and included them when if first filed its action. But the reality is that the bar in San Francisco is irrelevant, because the real dispute is about Full Circle's actions in New York.

**C.     The Court Should Find that This Is An Improper Venue for the Case.**

SBI did not really respond to the separate issue of dismissal for improper venue as opposed to lack of personal jurisdiction. Even were SBI able to meet its jurisdictional burden, the case would nonetheless be subject to dismiss for improper venue under Rule 12(b)(3) for two reasons: (1) the forum selection clause for a related contract means this case must be dismissed (discussed above) and (2) venue is improper independently under Rule 12(b)(3) if SBI fails to show that Full Circle "entered" this district in a way that would create confusion for SBI's customers. *See Adobe Sys. Inc. v. Childers*, 2011 U.S. Dist. LEXIS 14534, at *8 (N.D. Cal. Feb. 14, 2011) (Fogel, J.). As discussed above, Full Circle does not have any locations or employees in California. Its use of its trademark is in Brooklyn, New York, where its website and league are based and where the Full Circle bar is located. Merely talking on the phone to a representative of SBI who happens to be in California is not "entering" California when the representative is known to represent a company based in Pennsylvania and there is nothing special about California in any of the discussions. Full Circle's actions are not particularly directed to his state. Additionally, SBI makes skee-ball **machines**.[3] Their customers are

---

[3] Multiple times in its opposition, SBI asserts that it owns the intellectual property to the game of skee-ball. That is facially incorrect. SBI has not pointed to any SBI-owned patents in force today that cover the game of skee-ball, and since the patent term is 20 years, SBI's own argument that the game has existed for a century belie the notion that it owns intellectual property to the game itself. Presumably, although made multiple time, this was a mistaken statement, and what SBI really meant was that it has long held a trademark registration for the

arcades, not people who play skee-ball. They have not alleged or shown any members of the general public in California or elsewhere buy their products. There have been no allegations that arcade owners are confused by Full Circle, and particularly no such allegations as they would relate to California.

### IV. THE RELEVANT FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFERING THIS CASE TO NEW YORK

The Court should grant Full Circle's motion to dismiss for lack of personal jurisdiction or improper venue, but in the alternative, Full Circle undeniably has shown that the Court should at least transfer this case to be consolidated with the New York lawsuit. *See* 28 U.S.C. § 1404(a). SBI does not dispute the legal test for the Court to follow in determining the best venue for this case:

> In deciding whether to transfer on grounds of convenience and in the interest of justice, the Court considers eight factors: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Silver Valley Partners, LLC v. De Motte,* 2006 U.S. Dist. LEXIS 67745, *4-*5 (W.D. Wash. Sept. 21, 2006) (citing *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000)). The Ninth Circle also considers the presence of a forum selection clause. *See Jones*, at 499.

In its motion, Full Circle established that these factors weigh heavily in its favor. The first factor favors a transfer. The only agreements at issue between the parties are (1) the New York Agreement includes a New York forum selection clause, and (2) the agreement by SBI's CEO permitting Full Circle to pursue its Brewskee-Ball league and promotional activities, which

---

term "skee-ball" as it relates to a bowling game, as stated in the registration. In fact, as discussed in Full Circle's motion, SBI has no valid trademark rights in the term "skee-ball" as it pertains to skee-ball games (nor could it since, among other reasons, the term is generic for skee-ball games), which is at the issue in this lawsuit and the New York lawsuit.

occurred in communications between New York and eastern Pennsylvania. SBI does not assert any relevant agreement to this case that would cause California to be an appropriate venue.

The second factor as to trademark law is neutral, as the federal courts of California and New York are well-versed in such law. However, whether by claim or counterclaim, there are also two agreements involved that will apply New York law (and indeed require the case to be adjudicated in New York). Thus, this factor also weighs heavily in favor of transfer.

The third factor of plaintiff's choice, as discussed in Full Circle's motion, is not entitled to weight when there is little connection to the forum state or when the plaintiff is engaged in forum-shopping. There is substantial evidence of both here.

The fourth factor is perhaps the most important for this case: the respective parties' contacts with the forum. Although the plaintiff's opposition would like to make it seem like DBG is a party, it is not. There are only two parties in this case: Full Circle in New York and SBI in Pennsylvania. Neither has important contacts with California, particularly as to the facts related to this case. Their trademarks are based out of their respective home states of New York and Pennsylvania, and their agreements have been between those same states.

The fifth factor also weighs in favor of transfer: the location of contacts relating to the plaintiff's cause of action. Here, the acts upon which SBI's asserted claims are based relate to Full Circle's actions in New York. None of the actual harm complained of by SBI relates to California. Instead, SBI complains that Full Circle set up and runs a league out of New York that SBI believes damages it nationally and that Full Circle uses a registered trademark in New York that SBI believes damages it nationally.

The sixth factor also weighs in favor of transfer to New York. As Full Circle attested, as a small company, the cost of it fully participating in a case in San Francisco is prohibitive. (*See* Pavony Decl. [Doc. 5-2], ¶ 8.) The point is not whether the parties can find counsel here or even attend depositions, which can be anywhere, but rather whether they can easily travel to attend hearings and trial.[4] That is more costly and difficult for both Full Circle and SBI if the case is in

---

[4] Full Circle would posit that actually both parties are inconvenienced by the case being in San Francisco, and that, for example, it is possible that neither party will have a company employee present at the hearing for this motion due to the expense and inconvenience. The fact that SBI appears surprised that Full Circle was able to find counsel in San Francisco in time respond to

San Francisco, where neither party resides, instead of New York, where the defendant resides and a car ride away from the plaintiff.

Additionally, because Full Circle is and must pursue its lawsuit in New York, that suit cannot and should not be dismissed, in part because were Full Circle to attempt to file that claim as a counterclaim in this action, the claim would be dismissed for failing to follow the forum selection clause. The cost of two largely duplicative lawsuits based on overlapping underlying facts is much higher than one unified suit.

The seventh factor (availability of compulsory process to compel attendance of unwilling non-party witnesses) is either neutral or weighs in favor of transfer. No unwilling witnesses have been identified. As the declaration of Mr. Seidman implies, travel to New York is part of DBG's regular business anyway. In its opposition, SBI indicates that Howard Pavony may have been involved and therefore may be a witness, but he is not an employee of Full Circle and cannot be compelled to attend trial in California. It is likely that he would be subject to a properly issued subpoena, but that is just as true for any other potential witnesses in this case.

Finally, the ease of access to sources of proof weighs in favor of transfer. All the records of Full Circle are in New York. The Full Circle league itself is run out in Brooklyn, and the physical location of the Full Circle bar is in Brooklyn. As SBI noted, Full Circle's website is based in Brooklyn, and its BREWSKEE-BALL® trademark is registered in Brooklyn. Similarly, SBI's only location is near New York in eastern Pennsylvania. The CEO of SBI lives there and works there. He is a key witness to the case as he met with the owners of Full Circle, gave them his blessing to pursue their business, and signed the NDA that is related to the negotiations in this case. Other employees of SBI involved in communications as well as SBI's handling of its own trademark are also witnesses. DBG states that it has worked with SBI only since 2007, while the relevant history of SBI's trademark use and policing efforts (including, for example, whether SBI's free use of the term "skee-ball," lax enforcement, and indeed encouragement of using the term generically has ceded any rights in might once have had in the

---

the complaint just further indicates that this forum-shopping was done to gain tactical advantage, possibly in the hope that Full Circle would be unable to find counsel this far away and end up in default.

term) dates back over 80 years and may involve several employees or former employees of the company who will all be in or near the Eastern District of New York, where the registration for "skee-ball" originally issued, and eastern Pennsylvania. Presumably, the records of SBI's business, use of its purported "skee-ball" trademark, any trademark policing efforts to the extent there are any, revenues, and other proof are all located at SBI in eastern Pennsylvania or New York as well.  So this, too, weighs very heavily in favor of transferring the case to the Eastern District of New York.

Finally, while the plaintiff says it is not forum-shopping, the facts say otherwise.  It is unusual for a lawsuit to be filed where **no party resides**, neither the plaintiff nor the defendant.  It is all the more unusual to choose a venue all the way across the country from where both parties reside.  This dispute clearly is centered in New York and eastern Pennsylvania, not California.  SBI knew Full Circle was a small company in Brooklyn.  It knew Full Circle's actions where done in New York.  It knew it is a much bigger company that has much greater financial resources to fight a legal battle at a far-away location, and that it would strain Full Circle to have to try to do the same.  This is exactly the kind of inappropriate litigation tactic that should be rejected by courts.  This case should be dismissed in favor of the New York lawsuit or transferred to be consolidated with that case.[5]

///

///

///

///

///

///

---

[5] Perhaps realizing the impropriety of its actions in bringing this action in California and the lack of meaningful contact between Full Circle and California, SBI asks the Court for permission to conduct a hunting expedition to see if a reasonable connection can be found.  However, discovery is unnecessary to rule on a motion to dismiss or transfer, particularly when the parties have set forth pertinent facts by declaration as was done here.  *See, e..g., Facebook, Inc. v. Teachbook.com, LLC*, 2011 U.S. Dist. LEXIS 48590 (N.D. Cal. May 2, 2011) (Whyte, J.). This is just another way for SBI to try to run up Full Circle's expenses. The Court should deny the request.

## V. CONCLUSION

Based on the foregoing, Full Circle respectfully requests that the Court dismiss this action. The claims asserted in the complaint are compulsory counterclaims to the pending lawsuit in the Eastern District of New York, where the majority of acts underlying this litigation. Alternatively, if not outright dismissed, Full Circle asks that this case be transferred to the Eastern District of New York to be consolidated with the case pending there.

DATED: November 30, 2011                SEDGWICK LLP

                                        By: */s/ Robert Harkins*
                                            Robert Harkins
                                            Attorneys for Defendant FULL CIRCLE
                                            UNITED, LLC