IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKEE BALL, INC, | No. C -11-04930 EDL |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR TRANSFER** |
| v. | |
| FULL CIRCLE UNITED, | |
| Defendant. | |

Plaintiff Skee Ball, Inc., a Pennsylvania corporation, filed this action against Defendant Full Circle United, a New York company, seeking cancellation of Defendant's trademark, Brewskee Ball, and alleging trademark infringement of Plaintiff's trademark, Skee Ball. Plaintiff also alleges trademark dilution, false designation of origin and unfair competition. Before the Court is Defendant's motion to dismiss based on improper venue and lack of personal jurisdiction, or to transfer to the Eastern District of New York. The Court held a hearing on December 20, 2011. For the reasons stated at the hearing and in this Order, the Court grants in part Defendant's motion and transfers this case to the Eastern District of New York.

**Background**

Plaintiff Skee Ball alleges that it is a Pennsylvania corporation with its principal place of business in Chalfont, Pennsylvania. Compl. ¶ 4. Plaintiff alleges that it is engaged in the business of marketing, manufacturing and distributing the well-known and famous arcade game, Skee Ball. Id. Plaintiff alleges that Skee Ball began as an arcade game in or about 1908, and over the years, Plaintiff has created various versions of the game and/or licensed others to do so, including a miniature table version and an iPhone app. Id.

Plaintiff alleges that Defendant is a New York company with its principal place of business

in Brooklyn, New York. Compl. ¶ 5. Plaintiff alleges that Defendant is engaged in the business of arranging and conducting Skee Ball competitions throughout the United States, including within San Francisco, arranging and coordinating league Skee Ball play, and providing a website that advertises its competitions and league play. Id.; Compl. ¶ 20 According to Plaintiff, Defendant also owns Full Circle Bar in Brooklyn, and operates its Skee Ball competitions there as well as at other establishments in the United States. Compl. ¶¶ 5, 21. Plaintiff also alleges that Defendant advertises that it is the "First Ever Competitive Skee Ball League," and that the Full Circle Bar is the "National Home of Brewskee-Ball." Id.

Plaintiff alleges that it is the owner of the trademark, Skee Ball, for a "game in the nature of a bowling game and parts thereof." Compl. ¶ 9. According to Plaintiff, the trademark was originally used in commerce on December 8, 1908. Compl. ¶ 10. The trademark was registered on the Principal Register at the United States Patent and Trademark Office on May 5, 1929 under the Trademark Act of 1905. Compl. ¶ 10. Plaintiff alleges that the trademark has been renewed without interruption and remains registered on the Principal Register. Compl. ¶ 11; Ex. A. Plaintiff alleges that the trademark is famous and is widely recognized by the consuming public as a designation of source of the goods and services of Plaintiff. Compl. ¶ 13. Plaintiff alleges that its goods and services have been and are extensively advertised, publicized, and sold throughout the world, and throughout California under the Skee Ball mark. Compl. ¶ 14. Thus, Plaintiff alleges that together with consumer acceptance and recognition of the trademark, the trademark identifies Plaintiff's goods and services only, and distinguishes them from those of others. Compl. ¶ 14. Plaintiff alleges that it affixes the trademark to all copies of the game and uses the trademark in all advertising. Compl. ¶ 15.

Plaintiff alleges that Defendant registered the trademark, Brewskee Ball, on the Principal Register on February 26, 2008 and claimed in its registration application to have been using the trademark since December 2005. Compl. ¶ 17. The Brewskee Ball trademark is registered for: "Entertainment in the nature of skee ball games; entertainment services, namely, arranging and conducting of skee ball competitions; providing a website that provides statistics for skee ball league players; providing recognition and incentives by the way of awards to demonstrate excellence in the

field of skee ball." Compl. ¶ 17; Ex. B. Plaintiff alleges that the Trademark Manual of Examining Procedure does not allow the mention of a registered trademark or service mark that is registered to an entity other than the applicant in the identification of goods or services. Compl. ¶ 18. Plaintiff alleges that Defendant wrongfully incorporated Plaintiff's Skee Ball trademark into its own trademark, Brewskee Ball, in violation of the Lanham Act and the United States Patent and Trademark Office regulations, and therefore the Brewskee Ball trademark should be cancelled. Compl. ¶ 19.

Plaintiff alleges that Defendant also is engaged in the business of arranging and conducting BaseSKEEball competitions, which appear to be a game containing elements of Plaintiff's Skee Ball and baseball. Compl. ¶ 22; Ex. F. Plaintiff alleges that Defendant uses Plaintiff's trademark in connection with the sale, offering for sale and advertising of its Skee Ball League and its BaseSKEEball league services. Compl. ¶ 23. Plaintiff alleges that Defendant's use of Plaintiff's trademark goes well beyond that which would be required to simply identify the goods and services of Plaintiff. Compl. ¶ 24.

Plaintiff alleges that there is an overlap in Plaintiff's and Defendant's trade areas in that both Plaintiff's and Defendant's services are advertised and rendered in the same market, including within California. Compl. ¶ 25. Plaintiff alleges that Defendant's use of Plaintiff's trademark is likely to cause confusion, mistake or deception among consumers and potential consumers. Compl. ¶ 26.

On or about April 16, 2010, Plaintiff alleges that its counsel wrote to Defendant instructing it to cease and desist all uses of Plaintiff's trademark without authorization from Plaintiff. Compl. ¶ 27; Ex. G. In early 2011, Defendant engaged Plaintiff in negotiations for a trademark license and marketing agreement that would allow Defendant to use the trademark. Compl. ¶ 28. Plaintiff alleges that it offered an exclusive license to Defendant to use the trademark in conjunction with a league format. Compl. ¶ 28. The parties did not reach an agreement. Compl. ¶ 28.

After negotiations ceased, Plaintiff alleges that Defendant knowingly continued to use Plaintiff's trademark without authorization. Compl. ¶ 29. Plaintiff alleges that its counsel sent another cease and desist letter to Defendant on July 6, 2011. Compl. ¶ 30; Ex. H. Plaintiff alleges

3

that Defendant responded to the July 6, 2011 letter and indicated that it had no intention to cease the unauthorized use of Plaintiff's trademark. Compl. ¶ 31. Plaintiff alleges that Defendant continues to use the trademark without authorization. Compl. ¶ 31.

**Discussion**

**1.     Venue is improper in the Northern District of California**

In federal question cases, venue is proper in the following districts: (1) if all defendants reside in the same state, a district where any defendant resides; (2) a district in which a substantial part of the events or omissions on which the claim is based occurred; or (3) if there is no district in which the action may otherwise be brought, the district in which any defendant may be found. 28 U.S.C. § 1391(b). In this case, Plaintiff argues that a substantial part of the events giving rise to the claim occurred in this district and that therefore, venue is proper under § 1391(b)(2).

A party may bring a motion asking the court to dismiss the action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). It is Plaintiff's burden to show that venue is proper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California."). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." Murphy v. Schneider National, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted). Dismissal, rather than transfer, may be appropriate where the transfer would be futile because the case would be dismissed even after transfer. See Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah, 2008 WL 691851, *5 (N.D. Cal. 2008) (citing King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992)). Finally, "[a] motion to enforce a forum-selection clause is treated as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3)." Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005).

Defendant argues that the complaint fails to set forth a proper basis for bringing this case in this district. Neither party is from California. Plaintiff is located in one place, in Pennsylvania.

Harkins Decl. Ex. 7.  The claims asserted in this case are trademark infringement and related claims, and if any infringement took place, Defendant argues that it would have taken place where Defendant resides (in New York) or where Plaintiff is located (in Pennsylvania).  Defendant notes that the primary relief sought in this case is the cancellation of Defendant's trademark, and the location of the office to which the trademark is registered is in Brooklyn.  Compl. ¶ 17; Ex. B.  Further, Defendant's owners reside in Brooklyn.  Pavony Decl. ¶ 7.  Defendant does not have any offices or employees in California.  Pavony Decl. ¶ 7.  Defendant does not derive any licensing revenue from California for Brewskee Ball.  Id.  Defendant notes that the basis for venue in this district appears to be that Defendant's website lists several cities for skee ball leagues, including San Francisco, along with other big cities in other parts of the country.  Compl. ¶¶ 20-21; Ex. C-F.  The website also shows, however, that Defendant is based on Brooklyn.  Id.

Plaintiff argues that the Northern District is the appropriate venue because a "substantial part of the operative events giving rise to its claims" occurred in this district.  See Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2008).  Plaintiff's argument hinges solely on the fact that Defendant in New York had extensive communications with Dimensional Branding Group ("DBG"), located in Marin County, California, which is Plaintiff's exclusive agent for the licensing, business development and promotion of Plaintiff, the game and the trademark.  These communications were by phone or email between California and New York regarding the possible licensing of Plaintiff's trademark in connection with Defendants' skee ball league.  Specifically, Defendant and DBG engaged in "literally dozens - if not hundreds - of telephone calls and emails" between March 2010 and April 2011.  Leonhardt Decl. ¶ 8.  During those negotiations, Plaintiff's president Sladek was not involved, and DBG was Plaintiff's exclusive agent.  Id.  There is no dispute that Plaintiff and Defendant never met in California, and on the occasions that they did meet, those meetings were in New York.  Seidman Decl. ¶¶ 7-8.  Plaintiff argues that because the issue was whether Defendant would become a licensee, it would necessarily have to go through DBG in California.  Plaintiff further notes that DBG is a California company, and Attorney Moorhead, Plaintiff's transactional attorney and the lawyer who handles trademark protection for Plaintiff, is also located in Marin.  However, the location of Plaintiff's counsel is not a factor in the

5

venue analysis. See Williams v. Granitie Constr. Co., 2009 U.S. Dist. LEXIS 10756, at *1-2 (N.D. Cal. Feb. 3, 2009). Plaintiff notes that all key witnesses with DBG and Moorhead are located in this district.

Defendant's communications with DBG do not support finding venue in this district. DBG is not a party to this case and has no claim against Defendant. DBG has no agreement with Defendant, and the communications between Defendant and DBG addressed whether Plaintiff in Pennsylvania and Defendant in New York would enter into a licensing agreement. There is no dispute that Defendant engaged in extensive communications with DBG, Plaintiff's exclusive agent, regarding licensing Plaintiff's trademark. However, the licensing negotiations did not result in a licensing agreement. Further, the primary claims at issue in this case, that is, trademark cancellation, infringement and dilution, do not relate to those negotiations. Thus, the communications by Defendant with Plaintiff's California agent do not support a finding that a substantial part of the events giving rise to this case occurred here. Thus, venue is improper in this district and the Court need not reach the question of whether the confidentiality agreement contained a forum selection clause that would apply in this case.

Accordingly, the Court must dismiss this action unless transferring it to a district in which it could have been brought would be in the interest of justice. See 28 U.S.C. § 1406(a). In this case, transfer of this case to the Eastern District of New York, where it could have been brought, is in the interest of justice, particularly because the parties are already engaged in litigation in that district.

**2.     Transfer of this case to the Eastern District of New York is also appropriate under the forum non conveniens doctrine**

Under 28 U.S.C. § 1404(a), the Court has discretion to order transfer: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process. The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness." Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985); Jones v. GNC Franchising, 211 F.3d 495, 498

(9th Cir. 2000)). The burden is on the defendant to show that transfer is appropriate. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

Here, there is no dispute that the first prong of the § 1404(a) analysis is met. This action might have been brought under 28 U.S.C. § 1391(b)(1) in the Eastern District of New York because Defendant resides there. See 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . .").

As to the second prong of the § 1404(a) analysis, the plain language of the statute requires the Court to consider at least three factors in deciding whether to transfer a claim to another court: (1) convenience of parties; (2) convenience of witnesses; and (3) in the interest of justice. Ninth Circuit precedent requires that courts also weigh the plaintiff's choice of forum. See Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir.1985). In determining the convenience of the parties and witnesses and the interests of justice, a Court may consider a number of factors including:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

Gerin v. Aegon USA, Inc., 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007) (citing Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000)).

In the usual case, unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed." Securities Investor, 764 F.2d at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968).

Subsequent district court opinions have stated the standard in the disjunctive: "The degree

to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint." See, e.g., Fabus Corp. v. Asiana Express Corp., 2001 WL 253185, at *1 (N.D. Cal. March 5, 2001) (emphasis added); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing Fabus, 2001 WL 253185, at *1). However, transfer should be denied where it would "merely shift rather than eliminate the inconvenience." Decker Coal, 805 F.2d at 843.

### A. Plaintiff's choice of forum

In general, "defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum." Decker Coal, 805 F.2d at 843. This is especially true when a plaintiff chooses to sue in its "home turf." See Warfield v. Gardner, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference"); Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a domestic plaintiff's forum choice."); Chrysler Corp. v. Woehling, 663 F. Supp. 478, 482 (D. Del. 1987) ("This is so because the plaintiff is the founder of the suit and his choice of forum must be a 'paramount consideration' in determining a motion to transfer. However, when the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his "home turf," the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer.") (internal citation omitted). Here, Plaintiff is located in Pennsylvania. Further, the deference accorded to a plaintiff's chosen forum should be balanced against both the extent of a defendant's contacts with the chosen forum and a plaintiff's contacts, including those relating to a plaintiff's cause of action. See Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration." Id.

Plaintiff asserts that it chose this forum because its attorneys and DBG third party witnesses are primarily in California, and the only non-California witness would be Plaintiff's president Sladek. Plaintiff acknowledged at the hearing, however, that the location of counsel is not

1  a factor in the venue analysis.  Further, as described above, DBG's involvement was in license
2  negotiations which failed, not in the claims in this case.  Plaintiff also argues that there will be third
3  party witnesses from the San Francisco bar that hosts the skee ball league, but those witnesses are no
4  more important than witnesses from any of the bars across the country that also host the skee ball
5  leagues, or the bar owned by Defendant in New York.  On balance, there is no strong reason to give
6  deference to Plaintiff's choice of forum in this case.

**B.     Convenience of the parties**

Even though Plaintiff argues that it would be more convenient for it to litigate in California because its witnesses and counsel are here, Plaintiff is a Pennsylvania corporation and has not shown that it has "strong ties" here.  See Morales v. Navieras de Puerto Rico, 713 F.Supp. 711, 713 (D. N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico he does not, nor can he, seriously argue that New York is a more convenient forum than Puerto Rico, especially when none of the operative facts occurred in New York, but rather occurred in Puerto Rico.").  Further, the convenience of the parties' counsel is not a factor to be considered in the convenience analysis.  See Williams, 2009 U.S. Dist. LEXIS 10756, at *1-2.

Defendant argues that litigating in New York would be more convenient for Defendant, since it is a small company with its only office located in Brooklyn.  Defendant argues that New York would not be inconvenient for Plaintiff because Pennsylvania is a neighboring state.

On balance, this factor weighs in favor of transfer.

**C.     Convenience of the witnesses**

The convenience of the witnesses "is often the most important factor considered by the court when deciding a motion to transfer for convenience." Steelcase v. Haworth, 41 U.S.P.Q. 2d 1468, 1470 (C.D. Cal. 1996); see also Kannar v. Alticor, Inc., 2009 U.S. Dist. LEXIS 35091, *4 (N.D. Cal. Apr. 9, 2009).  The primary consideration is for the convenience of third party witnesses, and not employee witnesses.  See Royal Queentex Enters. v. Sara Lee Corp., 2000 U.S. Dist. LEXIS 10139, at *6 (N.D. Cal. Mar. 1, 2000).  Additionally, the Court should consider "not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." Kannar, 2009 U.S. Dist. LEXIS 35091, at *5

1 (quoting Steelcase, 41 U.S.P.Q. 2d at 1470).

2 Plaintiff focuses on the convenience of the third party DBG witnesses. However, as described above, these witnesses are not central to this trademark cancellation and infringement case. The issues in this case are whether Defendant improperly used Plaintiff's mark in obtaining Defendant's mark at the United States Patent and Trademark Office, whether Defendant used its own mark or used Plaintiff's mark, whether Plaintiff has any rights to enforce the name "skee ball," and whether Plaintiff gave permission to Defendant to use Plaintiff's mark. These issues are only tangentially related to the licensing negotiations conducted by DBG on behalf of Plaintiff, a Pennsylvania company.

Defendant notes that its principals, Eric Pavony and Evan Tobias, reside in New York. Pavony Decl. ¶ 7. The trademark sought to be cancelled was issued to Defendant in Brooklyn. Compl. Ex. B. Defendant's records are in Brooklyn. Pavony Decl. ¶ 7. Defendant notes that Plaintiff's trademark registration was originally also in the Eastern District of New York, and then assigned to the company in eastern Pennsylvania. Compl. Ex. A. Defendant notes that Plaintiff's witness Sladek is in Pennsylvania, and the complaint does not state that Plaintiff has any records or offices in California. Defendant also notes that communications between Plaintiff and Defendant (not with DBG) were between Pennsylvania and New York. Pavony Decl. ¶¶ 3-7.

Although there may be third party witnesses from the San Francisco bar that hosts the skee ball league for which this forum may be more convenient, on balance, the convenience of the witnesses weighs in favor of transfer.

### D. Other relevant factors

The factor going to ease of access to evidence is essentially neutral given the ability to email or otherwise transfer documents easily. The factor going to the familiarity of the forum with the applicable law is neutral. This is a trademark cancellation and infringement case and both California and New York courts are equally familiar with that area of law. Another factor is the local interests in the controversy. This factor favors New York because the trademark holders are both on the east coast and the trademark sought to be cancelled is issued to a New York company. Finally, the relative court congestion and time of trial in each forum are neutral factors. On balance,

the factors favor discretionary transfer to New York.

**Conclusion**

Defendant's motion to dismiss or transfer is granted in part. Rather than dismiss this action, the Court transfers this matter to the Eastern District of New York in the interest of justice. See 28 U.S.C. § 1406(a). Alternatively, discretionary transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404. Accordingly, the Court need not reach Defendant's argument that the Court lacks personal jurisdiction over Defendant.

**IT IS SO ORDERED.**

Dated: December 22, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge