UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FULL CIRCLE UNITED, LLC, a New York
limited liability company,

                Plaintiff,

        **11 CV 5476 (LB)**

    -against-

SKEE-BALL, INC., a Pennsylvania
corporation,

                Defendant.
---------------------------------------------------------------X
SKEE BALL, INC., a Pennsylvania
corporation,

                Plaintiff,

        **11 CV 6277 (LB)**

    -against-

FULL CIRCLE UNITED, LLC, a New York
limited liability company, and DOES 1
through 100, inclusive,

                Defendants.
---------------------------------------------------------------X

## MEMORANDUM AND ORDER

**BLOOM, United States Magistrate Judge:**

       Skee Ball, Inc. ("SBI") moves to dismiss Full Circle United, LLC's ("FC") complaint and

counterclaims in these consolidated actions.[1]  For the reasons discussed below, SBI's motion to

dismiss is granted in part and denied in part.

## BACKGROUND

       These actions involve a dispute over the use of the term "skee-ball" in nationwide

---

[1] The Court consolidated these cases pursuant to Rule 42 of the Federal Rules of Civil Procedure on August 21, 2012.  (Order dated August 31, 2012.)    The consolidated cases were reassigned to me on the parties' consent in accordance with 28 U.S.C. § 636(c).  (Order dated October 31, 2013.)

skee-ball leagues established and maintained by FC.  While the parties agree on little else, it is undisputed that (a) in 1929, the National Skee-Ball Company, Inc., of Coney Island, New York trademarked the term "SKEE-BALL" in reference to "a game in the nature of a bowling game and parts thereof, comprised in Class 22, Games, toys, and sporting goods" and (b) the "SKEE-BALL" trademark is now owned by SBI.  (FC Compl. ¶¶  26-27, Exh. 5; SBI Compl. ¶¶ 9-10.)  The heart of the parties' dispute, each party's challenge to the other's trademark, is not addressed in this Memorandum and Order.[2]  This Memorandum and Order is limited SBI's Fed. R. Civ. P. 12(b)(6) motion to dismiss FC's breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, and unlawful monopoly claims.

     I.     Procedural History and Background

         A.  <u>SBI's Lawsuit</u>

On October 5, 2011, SBI sued FC in the Northern District of California for trademark infringement.  Specifically, SBI alleges that FC, which arranges and conducts skee-ball leagues nationwide, registered the trademark "BREWSKEE-BALL" on February 26, 2008 and repeatedly uses the terms "SKEE-BALL" and "BaseSKEEball" (a game containing elements of skee-ball and baseball) on its website, print and media advertising, promotional materials, and prize materials.  (SBI Compl. ¶¶ 16-17.)  SBI seeks cancellation of the trademark registration for the "BREWSKEE-BALL" mark and an order enjoining FC from using or displaying the name "SKEE-BALL" in connection with FC's leagues and requiring FC to destroy such existing materials, including its domain name www.brewskeeball.com.  SBI also seeks damages for

---

[2] FC requested a stay of this action because it filed a petition to cancel SBI's trademark registration of "skee-ball," with the United States Patent & Trademark Office's Trademark Trial and Appeal Board ("TTAB") on May 1, 2014 and expects the TTAB to hold a trial in July 2015.  (ECF No. 41.)  FC's request is denied.  FC's complaint states that "[a] judicial determination is necessary and appropriate at this time" and that the parties' "controversy is incapable of resolution without judicial adjudication."  (Compl. ¶ 35.)  The Court finds that FC's pending petition does not warrant a stay of this action.  With the parties' cooperation, this action shall be expedited.

common law unfair competition and three types of Lanham Act violations: trademark

infringement, intentional dilution and tarnishment of the SKEE-BALL trademark, as well as

false designation of origin of services.

      B.  <u>FC's Lawsuit</u>

One month after SBI sued FC in the Northern District of California, FC sued SBI in this

Court under docket number 11-cv-5476.  FC's complaint requests, *inter alia*, cancellation of the

"SKEE-BALL" trademark and a declaratory injunction that FC may continue to call its skee-ball

league "BREWSKEE-BALL."

FC's claims are based on the following allegations.  In 2005, FC's co-founders, Eric

Pavony and Evan Tobias, came up with the idea of launching skee-ball leagues for adults in bars.

(Compl. ¶ 11, ECF No. 1.)  They met with SBI's CEO Joseph Sladek to discuss their gaming

league which they hoped to call "Brewskee-Ball."  (<u>Id.</u>)  Sladek told Pavony and Tobias that

SBI, as a machine manufacturer, wasn't in the business of creating leagues, but "agreed with

their pursuing their Brewskee-Ball league" and wished them luck.  (<u>Id.</u> ¶ 12.)

Based on SBI's representations at the 2005 meeting, Pavony and Tobias founded Full

Circle United, LLC in Brooklyn, New York, launched their Brewskee-Ball league, and obtained

a federal trademark for "BREWSKEE-BALL." (<u>Id.</u> ¶ 13.)  Reputedly, due in large part to FC's

efforts, skee-ball became more popular as a sport and a source of entertainment for adults, as

opposed to its traditional use, an arcade game for children.  (<u>Id.</u> ¶ 14.)  In 2010, SBI contacted

FC to see if the companies could work together.  (<u>Id.</u>)  On March 9, 2010, FC and SBI entered

into a confidentiality agreement ("2010 Confidentiality Agreement") and FC provided

confidential information to SBI, including information regarding its business operations and

business plans. (<u>Id.</u> ¶¶ 15-16.)  The following month, SBI's attorney threatened FC with legal

action in a cease and desist letter.  (Id. ¶ 17.)  The letter asserted that SBI had trademark

ownership of the phrase "skee-ball" to describe skee-ball games.  (Id.)

    When it received the April 2010 cease and desist letter, FC contacted SBI and was led to

believe "it was a non-issue and would not be pursued by SBI."  (Id. ¶ 18.)   The parties continued

to have discussions about working together.  However, on July 6, 2011, SBI's counsel sent FC a

second cease and desist letter. (Id. ¶ 19.)   Counsel for FC responded to that letter, stating FC's

reference to the game skee-ball by name is legally permitted by the doctrine of fair use and that

FC strives to avoid any confusion by using the term skee-ball only as much as is absolutely

necessary.  (Id. at Ex. 4.)

    When SBI sued FC in California, rather than in a district where one of the parties reside,

"it became clear" to FC that "SBI, upon obtaining [FC's] confidential information, decided to

breach the agreement, threaten [FC], and then obtain the benefit of [FC's] business and plans

exclusively for itself, in order to illegally assert a monopoly over the generic term 'skee-ball' and

… use that asserted monopoly to obtain anticompetitive advantage over [FC] with respect to

[FC's] current business and future business plans."  (Id. ¶ 20.)

    FC seeks the cancellation of the "SKEE-BALL" trademark and a declaratory judgment

that FC is entitled to use the term "skee-ball" in relation to its skee-ball league and its

BREWSKEE-BALL trademark.  FC also seeks to enjoin SBI from asserting the contrary in any

document or statement.  FC alleges that SBI breached a 2005 verbal agreement, the 2010

Confidentiality Agreement and the covenant of good faith and fair dealing; engaged in unfair

competition; and violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully asserting a

monopoly over the term "skee-ball" to describe skee-ball games, threatening to bring legal action

over the use of the term, attempting to drive FC out of business, and selectively asserting the

mark against FC but not other users of the term.

The facts alleged in FC's complaint against SBI in 11-cv-5476 are identical to FC's counterclaims in 11-cv-6277.

### C.   Transfer of SBI's Lawsuit to this Court

FC moved to transfer SBI's suit from the Northern District of California to this district. On December 12, 2011, after finding venue improper there, the Northern District of California transferred SBI's complaint to this Court and the case was assigned docket number 11-cv-6277. (ECF No. 20, 11-cv-6277.)

### D.   SBI's Motion to Dismiss

SBI moves to dismiss FC's complaint on the grounds that the claims alleged should have been brought as counterclaims in 11-6277.  In the alternative, SBI moves to stay FC's action pending the resolution of 11-cv-6277.   By the same motion, SBI seeks dismissal of FC's claims for breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, and for a Sherman Act violation for failure to state a claim.   In response, FC agreed that its claims for declaratory and injunctive relief regarding FC's use of the terms "skee-ball" and "BREWSKEE-BALL" were compulsory counterclaims, (FC Opp'n at 6, ECF No. 38), but insisted that its remaining claims were not compulsory counterclaims and opposed the dismissal of those claims.  In its own lawsuit (11-cv-6277), SBI moves to dismiss FC's counterclaims for failure to state a claim and FC opposes the motion.  The parties make identical arguments in both cases.

### E.   Consolidation and Mediation

By Order dated August 31, 2012, the Court consolidated these actions. The Court stayed these matters to permit the parties to engage in mediation, which unfortunately did not resolve

5

the dispute.   The parties consented to the jurisdiction of a magistrate judge and then re-filed the motions, oppositions, and replies, that were filed prior to the Court's consolidation of these cases.  As the facts alleged and claims are identical in FC's complaint and counterclaims – and the parties' briefs are essentially the same in both cases, the Court cites only to the pleadings and motions in the lead case, 11-cv-5476.[3]

## STANDARD

When ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1 (2002)); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir.1999).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id.

## DISCUSSION

I.      Compulsory Counterclaims

SBI argues that FC's complaint in 11-cv-5476 should be dismissed because FC's claims should have been brought as compulsory counterclaims or the action should be stayed, and FC's claims should be litigated as counterclaims in the 11-cv-6277 action.  Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, as relevant herein, "[a] pleading must state as a

---

[3] The Court notes that SBI filed the first action, albeit in an improper venue, and appears to argue that it will be prejudiced if its case is not the lead case.  The Court notes that these cases were originally deemed consolidated by the Clerk of Court, prior to a judicial determination.  Several months after the fact, the Court determined that the cases should be consolidated.  (Order dated August 31, 2012.)   At this juncture, the Court need not reconsider the consolidation or lead case designation.

counterclaim any claim that--at the time of its service--the pleader has against an opposing party

if the claim … arises out of the transaction or occurrence that is the subject matter of the

opposing party's claim." However, as one court noted:

> [T]he filing of a separate action in lieu of a compulsory counterclaim … is not a violation
> of Rule 13(a). Such a practice does, however, contravene the purpose of the Rule in that
> it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the
> litigation process. When faced with such a situation, courts have a number of options at
> their disposal. Where a party institutes a second action based upon a compulsory
> counterclaim in a still pending action, courts can use the procedural devices of transfer,
> stay and consolidation to avoid multiple litigation and to effectuate the Rule.

Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC, 208 F.R.D. 59, 63-64 (S.D.N.Y.

2002)(internal quotation marks and citations omitted). The Court has already consolidated these

cases; therefore, dismissal or stay of the 11-cv-5476 action is unnecessary. See Algonquin Power

Corp. v. Trafalgar Power, Inc., No. 00-CV-1246(DEP), 2000 WL 33963085, at *6 (N.D.N.Y.

Nov. 8, 2000) (recommending motion to dismiss claims as compulsory counterclaims be denied

as "academic" because the actions were consolidated). Indeed, neither party objected to the

consolidation or altered their briefs in light of the consolidation. Although, SBI notes in a

footnote that the claim/counterclaim distinction "will be important going forward when it is

necessary to determine such issues as which party goes first at trial, etc.," (SBI's Mem. of Law in

Supp. of Mot. to Dismiss at 10 n.3, ECF No. 33), it is unnecessary to decide that issue at this

juncture.

II.     SBI's Motion to Dismiss

A.   Breach of Contract

1.   2005 Agreement

FC alleges that SBI's CEO's statements made at the 2005 meeting  - specifically that he

"agreed with [FC's founders'] pursuing their Brewskee-Ball league" and wished them luck -

constituted an oral contract between the parties that FC "would be permitted without interference to form and maintain its BREWSKEE-BALL league, which in turn would inure to SBI's benefit by ... promoting skee-ball and in turn increasing good will and demand for SBI's products." (Compl. ¶ 12.)  SBI moves to dismiss this claim on three grounds: that any oral agreement was superseded by the 2010 Confidentiality Agreement; that FC fails to plead the material terms of the agreement; and, that the purported oral contract violates the Statute of Frauds.  SBI's motion is granted on the latter two grounds only and FC's breach of contract claim is dismissed.

a. Effect of the 2010 Agreement

SBI's argument that the 2010 Confidentiality Agreement supersedes the alleged 2005 oral agreement is two-pronged.   First, SBI argues that the 2010 Confidentiality Agreement's statement that no license was being conferred by the confidentiality agreement or by the information disclosed pursuant to the agreement establishes that there was no prior agreement regarding the use of the term "SKEE-Ball."  As FC states, the 2010 Confidentiality Agreement "is a simple confidentiality agreement," nothing more.  (FC Opp'n at 12.)   The cited clause merely demonstrates that the 2010 Confidentiality Agreement is not a licensing agreement. Second, SBI argues that the 2010 Confidentiality Agreement constituted "the entire agreement of the Parties ... and supersedes all prior and contemporaneous oral and written agreements ... " which renders the 2005 Oral Agreement void.  (SBI Mem. of Law at 12.)  However, this clause actually states that the 2010 Confidentiality Agreement "contains the entire agreement of the Parties *with respect to the subject matter hereof* and supersedes all prior and contemporaneous oral and written agreements, negotiations, understandings and communications *regarding such subject matter*."  (Compl., Exh. 1 ¶ 14.)  The subject matter of the agreement is not, as SBI contends the current or proposed business relationship between the parties, but the

8

confidentiality of information disclosed in their discussions.  (<u>Id.</u> ¶ 1.)  Moreover, the 2010

Confidentiality Agreement explicitly states that "[n]othing contained in this Agreement shall

limit the terms and conditions of any … other agreement by and between the parties."   (<u>Id.</u> ¶ 12.)

Therefore, the Court rejects SBI's contention that the 2005 oral agreement was superseded by the

2010 Confidentiality Agreement.

b.  <u>Material Terms of the Agreement</u>

"In order to state a claim of breach of contract, the complaint must allege: (i) the

formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of

defendant to perform; and (iv) damages."  <u>Johnson v. Nextel Commc'ns, Inc.</u>, 660 F.3d 131,

142 (2d Cir. 2011).  "To show that an enforceable contract existed, the claimant must plead facts

surrounding the formation of the contract such as the date the parties entered into the contract,

the major terms of the contract, the parties to the contract, and that the party to be bound assented

to the contract."  <u>Fuji Photo Film U.S.A., Inc. v. McNulty</u>, 669 F. Supp. 2d 405, 412 (S.D.N.Y.

2009).

"Although it is not necessary for each element to be pleaded individually, a claim that

fails to allege facts sufficient to show that an enforceable contract existed between the parties is

subject to dismissal."  <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).  "The

fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties, and, if

there is no meeting of the minds on all essential terms, there is no contract."  <u>Benicorp Ins. Co. v.</u>

<u>Nat'l Med. Health Card Sys.</u>, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) (citation omitted).

Accordingly, "[t]he existence of the agreement is dependent upon allegations demonstrating,

<i>inter alia,</i> the parties' mutual assent to the terms of the agreement."  <u>CAC Grp., Inc. v. Maxim</u>

<u>Grp., LLC</u>, No. 12 Civ 5901(KBF), 2012 WL 4857518, at *3 (S.D.N.Y. Oct. 10, 2012).

9

SBI moves to dismiss on the grounds that FC fails to plead the existence of an oral contract. The Court agrees. First, SBI's agreement with FC's "pursui[t]" of BREWSKEE-BALL leagues and wishing FC's co-founders luck does not plausibly allege that SBI assented to FC's unfettered use of the term "SKEE-BALL." See generally  Mantana v. Merkin, No. 13 Civ. 1534(PAE), 2013 WL 6147700, at *4 (S.D.N.Y. Nov. 22, 2013)(dismissing breach of oral contract where at best, plaintiff only alleged an oral promise on which it relied). Second, to the extent FC is not alleging SBI's statements granted it unfettered use of the term "SKEE-BALL," the complaint is deficient because there are no allegations regarding what the reasonably certain material terms of the alleged oral contract were, including but not limited to, what rights if any SBI was giving up or licensing, how it was to perform its duty of "noninterference" with FC's "pursuing" the leagues, and how long any license would last. See Hudson & Broad, Inc. v. J.C. Penney Corp., No. 12 Civ. 3239(KBF), 2013 WL 3203742, at *2 (S.D.N.Y. June 18, 2013)(dismissing complaint where plaintiff failed to allege "reasonably certain material terms" such that it was unclear what type of contract plaintiff claimed was formed). "Under New York law, before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained." Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870(AT), 2014 WL 764250, at *2 (S.D.N.Y. Feb. 25, 2014). Where as here, "[p]laintiff's allegations lack the necessary specificity" as to the material terms of the contract, the allegations are "too indefinite to create an enforceable contract." Id. (dismissing breach of oral contract where promise to take care of plaintiff was too vague and indefinite and plaintiff did not specify the form, frequency, and amount of payment of the purported contract).[4]

---

[4]  To the extent FC proposes new factual bases for its breach of contract claim in its opposition brief, the Court shall not consider these additional facts. See generally Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (the court "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under [Rule 12(b)(6)].")  As the pleading stands, it is "insufficient to make the requisite plausible factual

Accordingly, FC has failed to plausibly assert the formation of an oral contract no less a breach thereof.

### c. Statute of Frauds

Even if FC had pled all material terms of the purported oral contract, the contract would be barred by the Statute of Frauds.  The Statute of Frauds, as codified in New York General Obligations Law § 5–701(a)(1), provides:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement, promise or undertaking: ... [b]y its terms is not to be performed within one year from the making thereof ... .

"The purpose of the [Statute of Frauds] is to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury."  Nasso v. Bio Reference Lab., Inc., 892 F. Supp. 2d 439, 446-47 (E.D.N.Y. 2012)(citation and internal quotation marks omitted).  See also Sheehy v. Clifford Chance Rogers & Wells LLP, 3 N.Y.3d 554, 560 (2004) ("Because memories fail over time, the statute requires a written contract for an agreement that is not to be performed within one year of its making.").

The "key question" in determining whether the agreement is not to be performed within one year from its making is "whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year."  South Cherry Street, LLC v. Hennessee Grp. LLC, 573 F.3d 98, 104 (2d Cir. 2009)(citing D&N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 454(1984)).  "If an agreement may be fairly and reasonably interpreted to permit performance within a year, the Statute of Frauds will not bar a breach of contract action no matter how improbable it may be that performance will actually occur within

---

demonstration of the basis of [FC's breach of contract] claim." Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011).

that time frame." <u>Guilbert v. Gardner</u>, 480 F.3d 140, 151 (2d Cir. 2007)(citation omitted). This "provision relates to the performance of the *contract* and not just of one party thereto. Thus, full performance by all parties must be possible within a year to satisfy the Statute of Frauds." <u>Id.</u> (citation omitted). [5]

As the 2005 oral contract alleged herein "does not specify a duration, and contains no provision under which either party might rightfully terminate it within the year of its making, it comes within the ambit of the Statute of Frauds." <u>Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.</u>, 244 F.R.D. 204, 217-18 (S.D.N.Y. 2007). The Court rejects FC's argument that part performance of an oral agreement takes the agreement outside the Statute of Frauds. "[T]he part performance doctrine may be invoked only if plaintiff's actions can be characterized as unequivocally referable to the agreement alleged." <u>Nasso</u>, 892 F. Supp. 2d at 450-51 (internal quotation marks and citation omitted). Under this requirement, "the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement;" and, "where more than one potential explanation for the alleged partial performance is supported by the facts, the part performance exception to the statute of frauds does not apply." <u>Id.</u> (internal quotation marks and citation omitted). Here FC's use of the terms "BREWSKEE-BALL" or "skee-ball" could be explained without reference to the alleged oral agreement such that FC may not rely on part performance to escape the Statute of Frauds.

---

[5] For its proposition that the Statute of Frauds is inapplicable because there was no express stipulation not to perform the contract in a year, FC relies on a 1978 Second Circuit decision that states that "[t]he practice of the New York courts has been to construe this one-year provision of the statute narrowly" and "the one-year provision has been held to bar enforcement of oral contracts only in those cases where the contract is by express stipulation not to be performed within a year" and not to cases "in which the performance of the agreement depends upon a contingency which may or may not happen within the year." (FC Opp'n at 14 (quoting <u>Weisse v. Engelhard Minerals & Chem. Corp.</u>, 571 F.2d 117, 119 (2d Cir. 1978)(internal quotation marks omitted)). However, this 1978 case does not reflect the current state of the law. In 2009, the Circuit stated, "[t]he principle that this aspect of the Statute of Frauds encompasses only those contracts that 'by their very terms have absolutely no possibility in fact and law of full performance within one year,... has not, however, been applied literally." <u>South Cherry Street, LLC</u>, 573 F.3d at 105 (internal quotation marks and citation omitted).

Although FC states that either party could have concluded the agreement in a year, "termination is not performance, but rather the destruction of the contract where there is no provision authorizing either of the parties to terminate as a matter of right." D&N Boening Inc., 63 N.Y.2d at 456-57.  Cf. Caruso v. Grace, No. 11 Civ. 2353(SAS), 2011 WL 4472479, at *7 (S.D.N.Y. Sept. 27, 2011)("there is always a possibility that the agreement will cease to be relevant after a year—for instance if the parties die or no longer wish to market the item in question—these remote contingencies are considered more akin to a termination of the contract, rather than a performance.")  Indeed, "when determining whether a contract is capable of performance within a year for Statute of Frauds purposes, the endurance of defendant's liability is the deciding factor." Levine v. Zadro Products, Inc., No. 02 Civ. 2838(GBD), 2003 WL 21344550, at *4 (S.D.N.Y. June 9, 2003)(internal quotation marks and citation omitted).  Here, even if FC decided to stop using the name BREWSKEE-BALL within one year, SBI's purported obligation not to interfere with FC's business by, for example, suing for trademark infringement (the breach alleged herein) for use of the term within that first year, would continue in perpetuity. However, "[i]n order to remove an agreement from the application of the statute of frauds, *both parties* must be able to complete their performance of the contract within one year." Yong Ki Hong v. KBS Am., Inc., 951 F. Supp. 2d 402, 427 (E.D.N.Y. 2013)(quoting Sheehy, 3 N.Y.3d at 560).  As it would have been impossible for SBI to perform its part of the bargain within one year, the alleged 2005 oral contract is barred by the Statute of Frauds. See generally South Cherry Street, LLC, 573 F.3d at 106 (where "the option to terminate was *solely* in the plaintiff, the party seeking to enforce the agreement, and not in the party to be charged," the contract is barred by the Statute of Frauds).

13

2.  2010 Confidentiality Agreement

FC alleges that SBI breached the 2010 Confidentiality Agreement by sending cease and desist letters, filing the instant lawsuit, and using FC's confidential information for itself.  As an initial matter, the Court rejects SBI's argument that its lawsuit is protected by New York's litigation privilege.   The cases SBI cites are inapposite as they involve claims for defamation based on statements made in a lawsuit, not claims for breach of contract based on the filing of a lawsuit.

However, the Court finds that FC fails to plausibly allege a breach of contract claim based on the 2010 Confidentiality Agreement.  As FC notes in its opposition brief, the contract was "a simple confidentiality agreement."  Nonetheless, despite its simplicity, FC fails to "allege the specific provisions of the contract upon which the breach of contract claim is based."  Fuji Photo Film U.S.A., Inc., 669 F. Supp. 2d at 412-13.  A "conclusory statement that the accused breached a contract" is insufficient.  Id.   In addition, FC fails to allege what information deemed confidential under the 2010 Agreement SBI disclosed when it threatened to sue FC, sued FC, or used FC's plans to "illegally assert a monopoly over the generic term 'skee-ball.'"  (Compl. ¶ 20.)  FC's allegation regarding SBI's "illegal[] assert[ion of] a monopoly" is not factual but a legal conclusion.  Iqbal, 556 U.S. at 678.  Moreover, as FC disclosed its idea of creating leagues for adults to play skee-ball in bars, which it would call "BREWSKEE-BALL," in 2005, there are no facts in the complaint that "nudge" FC's breach of the 2010 confidentiality agreement claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 569.   Accordingly, FC's claim based on the 2010 Confidentiality Agreement is dismissed for failure to state a claim.

B.  Breach of Good Faith and Fair Dealing

"Under New York law, parties to an express contract are bound by an implied duty of

good faith … ."  <u>Harris v. Provident Life & Accident Ins.</u>, 310 F.3d 73, 80 (2d Cir. 2002)

(quotation marks omitted).  "While the implied covenant of good faith and fair dealing does not

imply obligations inconsistent with other terms of the contractual relationship, it does encompass

any promises which a reasonable person in the position of the promisee would be justified in

understanding were included."  <u>Manhattan Motorcars, Inc.</u>, 244 F.R.D. at 214 (internal quotation

marks and citations omitted).  However, "New York law … does not recognize a separate cause

of action for breach of the implied covenant of good faith and fair dealing when a breach of

contract claim, based upon the same facts, is also pled."  <u>Harris</u>, 310 F.3d at 81.  "Therefore,

when a complaint alleges both a breach of contract and a breach of the implied covenant of good

faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."

<u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 125 (2d Cir. 2013).

      SBI argues that FC's "claim for breach of the covenant of good faith and fair dealing only

survives if its breach of contact claim survives."  (SBI Mot. to Dismiss at 13.)  This is incorrect.

A breach of the covenant of good faith and fair dealing and breach of contract claim can only co-

exist in a pleading when the two claims are based on different facts.  Here, FC's breach of

contract claim and breach of good faith and fair dealing claim are based on different facts.  While

the breach of the confidentiality agreement claim requires facts plausibly alleging that SBI

improperly disclosed confidential information, the breach of good faith and fair dealing claim is

based on the purported misuse of information obtained by SBI under the guise of collaboration

and disclosed by FC in conjunction with the confidentiality agreement.  <u>See Konecranes, Inc. v.</u>

<u>Cranetech, Inc.</u>, No. 03 CV 6082(MAT), 2005 WL 246916, at *3 (W.D.N.Y. Feb. 2,

2005)(breach of good faith and fair dealing claim, which alleged that defendant misappropriated

confidential information, was not redundant to breach of contract claim, which was based on

alleged improper disclosure of confidential information).  Accordingly, the Court finds that FC's good faith and fair dealing claim is not redundant to FC's purported breach of contract claim. Therefore, SBI's motion to dismiss this claim is denied.

      C.  <u>Unfair Competition Claim</u>

SBI argues that there is no private right of action for damages under the Federal Trade Commission Act.  FC does not dispute this but states that it makes this claim under state law. "[T]he essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  <u>Telecom Int'l Am., Ltd. v. AT & T Corp.</u>, 280 F.3d 175, 197 (2d Cir. 2001)(citation omitted).  <u>But see</u> <u>Roche Diagnostics GmbH v. Enzo Biochem, Inc.</u>, - F. Supp. 2d - , No. 04 Civ. 4046(RJS), 2013 WL 6987614, at *8 n.7 (S.D.N.Y. Dec. 6, 2013) ("in rejecting the notion that unfair competition is equivalent to the amorphous term 'commercial unfairness,' the New York Court of Appeals has stated that misappropriation of another's commercial advantage is a cornerstone of the tort").  "Although unfair competition often involves misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies if wrongful or fraudulent tactics are employed."  <u>Barbagallo v. Marcum LLP</u>, 820 F. Supp. 2d 429, 447 (E.D.N.Y. 2011)(internal quotation marks omitted).  Here, FC's allegations that SBI enticed FC to disclose its business strategies only to misappropriate them for itself, could assert a plausible unfair competition claim.  As SBI raises no other basis to dismiss this state law claim, its motion to dismiss this claim is denied. [6]

---

[6] Notably, SBI does not move to dismiss on the grounds that FC fails to allege how SBI misappropriated the information FC disclosed or that this claim is duplicative of any other claims.

D.  Sherman Act

SBI also moves to dismiss FC's claim under the Section 2 of the Sherman Act, ("Section

2"), which prohibits the monopolization of interstate or international commerce.  15 U.S.C. § 2.[7]

Section 2 is intended to stem the unlawful acquisition or maintenance of market power, i.e. the

power "to force a purchaser to do something that he would not do in a competitive market."

Eastman Kodak Co. v. Image Tech. Servs., 504 U.S. 451, 464 (1992). "[I]n order to state a claim

for monopolization under Section 2 of the Sherman Act, a plaintiff must establish (1) the

possession of monopoly power in the relevant market and (2) the willful acquisition or

maintenance of that power as distinguished from growth or development as a consequence of a

superior product, business acumen, or historic accident."  PepsiCo, Inc. v. Coca-Cola Co., 315

F.3d 101, 105 (2d Cir. 2002)(citation and internal quotation marks omitted).  Aggressive and

even unfair business behavior that injures a rival is not monopolistic.  See e.g., Major League

Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 318 (2d Cir. 2008)( "The antitrust laws were

enacted for 'the protection of *competition,* not *competitors.*")(internal quotation marks omitted).

Instead, "[t]he conduct that Section 2 brands as anticompetitive must additionally cause or

threaten harm to consumers from lower market output, higher prices, reduced innovation, or

---

[7] The statute provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other
> person or persons, to monopolize any part of the trade or commerce among the several States, or with
> foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine
> not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not
> exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2.  Pursuant to 15 U.S.C. § 15:

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust
> laws may sue therefor in any district court of the United States in the district in which the defendant resides
> or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the
> damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

some other indicator of diminished competitiveness."  Phillip E. Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law, §651e, at 119 (3d ed. 2011)(hereinafter "Areeda").

SBI's motion to dismiss FC's Sherman Act Section 2 claim is four-fold: FC fails to define the relevant market, fails to adequately allege SBI's purported market power, fails to allege any anticompetitive conduct, and fails to and cannot allege an antitrust injury.

### 1.   Relevant Market and Market Power

FC "may allege monopoly power by pleading: (1) power to control prices or exclude competition; or (2) possession of a predominant share of the relevant market."  Moccio v. Cablevision Systems Corp., 208 F. Supp. 2d 361, 376 (E.D.N.Y. 2002).  Here, FC makes two claims regarding SBI's "relevant market" and "monopoly power":  (1) "SBI has and continues to unlawfully assert a monopoly over the term 'skee-ball' to describe skee-ball games, and to threaten and bring unlawful legal action against [FC] with respect to the same;" and (2)  "[b]y its use of its alleged trademark rights used unlawfully, … SBI has effectively obtained possession of monopoly power in the relevant market regarding use of the term 'skee-ball' to describe skee-ball games, as well as obtained market power in the skee-ball game market … ."  (Compl. ¶¶ 57-58.)

As an initial matter, a trademark is a lawful, albeit limited, monopoly over the use of a certain mark.  See generally F.T.C. v. Actavis, Inc., 133 S.Ct. 2223, 2231 (2013)("A *valid* patent excludes all except its owner from the use of the protected process or product."); Professional Real Estate Investors, Inc. v. Columbia Pictures, Indus., 508 U.S. 49, 64 (1993)(underlying copyright principles is "the notion of copyright as a 'limited grant' of 'monopoly privileges''). Therefore, FC's allegation that SBI has a monopoly over the term "SKEE-BALL" merely restates this innocuous fact.  The Supreme Court has held that simply possessing the intellectual

property does not confer market power or give rise to a legal presumption of such power.  See Illinois Tool Works, Inc. v. Ind. Ink, Inc., 547 U.S. 28, 45 (2006) ("a patent does not necessarily confer market power" and plaintiff must still prove that the holder has market power to establish an antitrust violation).  Accordingly, FC's allegation that SBI has a "monopoly over the term 'skee-ball'" without any facts regarding SBI's possession of monopoly power, i.e. market power, is insufficient to state a claim.[8]

Second, it is unclear what market FC alleges SBI has a monopoly in.  A Section 2 "plaintiff must allege a plausible relevant market in which competition will be impaired."  City of New York v. Group Health Inc., 649 F.3d 151, 155 (2d Cir. 2011).  "To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes—analysis of the interchangeability of use or the cross-elasticity of demand."  Todd v. Exxon Corp. 275 F.3d 191, 200 (2d Cir. 2001)(internal quotation marks and citation omitted).  "'Cross-elasticity of demand' refers to the extent to which consumers will change their consumption of one product in response to a price change in another."  Flash Electronics, Inc. v. Universal Music & Video Distribution Corp., 312 F. Supp. 2d 379, 391 n.5 (E.D.N.Y. 2004).  "The relevant market must be defined as all products reasonably interchangeable by consumers for the same purposes, because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level."  City of New York, 649 F.3d at 155 (internal quotation marks and citation omitted).

---

[8] Even assuming the SBI is unfairly prohibiting FC from using the term "skee-ball," there are no factual allegations that this then enables SBI to "price monopolistically without prompt erosion from rivals' entry or expansion." Areeda, ¶ 501 at 111.  In other words, the trademark does not provide the power to exclude FC; FC can still enter the market it intends to enter as long as it doesn't unlawfully trespass on SBI's mark.

FC's complaint alleges that SBI has "obtained market power in the skee-ball game market." This could be the skee-ball machine market, skee-ball social gaming market (which is the only market FC participates in), or even less likely, the amusement game market in general (which is referenced in FC's opposition to the instant motion).[9] Regardless, since FC fails to "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand," the pleading is "legally insufficient and a motion to dismiss may be granted." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 238 (2d Cir. 2008). See Global Discount Travel Servs. v. Trans World Airlines, 960 F. Supp. 701, 705 (S.D.N.Y. 1997)("plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") Moreover, SBI asserts, and FC does not appear to contest, that the complaint limits its market definition to a single brand. However, "the law is clear that the distribution of a single brand, like the manufacture of a single brand, does not constitute a legally cognizable market." Carell v. Shubert Org., 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000). FC's "failure even to attempt a plausible explanation as to why a market should be limited in [this] particular way" warrants dismissal for failure to state a claim. Todd, 275 F.3d at 200.

### 2. Anticompetitive Conduct

Even if FC had properly pled the relevant market, its Section 2 claim would be dismissed because the complaint fails to plausibly allege anticompetitive conduct. "The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it

---

[9] FC's opposition to instant motion also argues that SBI is "self-professed to be the primary source of skee-ball machines in the United States" and quotes SBI's website which states that it is an industry leader in the amusement game industry. (FC Opp'n at 22.) However, the Court cannot read these allegations into the pleadings. See generally, Todd, 275 F.3d at 198 ("It is … improper to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.")(internal quotation marks omitted).

is an important element of the free market system" because it "attracts business acumen" and "induces risk taking that produces innovation and economic growth." Verizon Commc'ns v. Law Offices of Curtis V. Trinko, 540 U.S. 398, 407 (2004).  Accordingly, "[t]o safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*"  Id.  Anticompetitive conduct:

> is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits. Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive. Conduct that merely harms competitors, however, while not harming the competitive process itself, is not anticompetitive.

Lotes Co. v. Hon Hai Precision Indus., No. 12 Civ. 7465(SAS), 2013 WL 2099227, at *5 (S.D.N.Y. May 14, 2013).  "Even under notice pleading, an antitrust defendant … is entitled to some specificity as to the conduct alleged to be coercive, … the anticompetitive effects in a specified market, and the effect on the business of the plaintiff."  E & L Consulting v. Doman Indus., 472 F.3d 23, 32 (2d Cir. 2006).

Here, FC alleges SBI engaged in the allegedly anticompetitive conduct of "its efforts to put [FC] out of business, wrongful use of [FC's] confidential information to undermine [FC's] business, direct threats to [FC] that it would take legal action against [FC], its wrongfully filed lawsuit to enforce rights it does not have, and its actions in trying to maintain a monopoly of the term 'skee-ball' to undermine competition of the skee-ball industry including, specifically, competition from [FC]."  (FC Opp'n at 24.)[10]

Missing from FC's pleadings is any allegation that SBI used predatory tactics or leveraged its monopoly in the skee-ball machine market to harm the competitive process itself,

---

[10] SBI's argument that FC's allegations are "false, utterly implausible, and without any factual support" goes too far. (SBI Mot. to Dismiss at 19.)  FC's factual allegations must be accepted, at this juncture, to be true.  Nonetheless, taken as true, the factual allegations do not plausibly state a claim of anticompetitive conduct.

reduce output or price or decrease quality in the social gaming market or any other market.

"The gravamen of the offense is *not* the enlargement of the defendant's market share at the

plaintiff['s] expense or even the destruction of plaintiff[] by unfair means.  Rather it must be

monopoly market performance measured by reduced output or higher prices in the secondary

market."  Areeda, §652c at 142.  FC fails to allege any facts regarding monopolistic conduct – as

opposed to selective aggressive conduct against a rival – in the skee-ball gaming market.

Therefore, FC's Sherman Act Section 2 claim is dismissed for failure to state a claim.[11]

### 3.   Anticompetitive Injury

Finally, FC fails to allege an anticompetitive injury.  "In addition to injury in fact … ,

antitrust standing for a private plaintiff requires a showing of a special kind of 'antitrust injury,'

as well as a showing that the plaintiff is an 'efficient enforcer' to assert a private antitrust claim."

Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007).  The Second

Circuit delineated the "three-step process for determining whether a plaintiff has sufficiently

alleged antitrust injury" as follows:

> First, the party asserting that it has been injured by an illegal anticompetitive practice
> must identify the practice complained of and the reasons such a practice is or might be
> anticompetitive. Next, we identify the actual injury the plaintiff alleges.  This requires us
> to look to the ways in which the plaintiff claims it is in a worse position as a consequence
> of the defendant's conduct.  Finally, we compare the anticompetitive effect of the specific
> practice at issue to the actual injury the plaintiff alleges. ... [I]n order to establish antitrust
> injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were
> intended to prevent and that flows from that which makes or might make defendants' acts
> unlawful.

---

[11] Moreover, the Court notes that the doctrine of antitrust immunity for acts petitioning or directed towards
influencing governmental action may apply to SBI's lawsuit.  Eastern R.R. Presidents Conference v. Noerr Motor
Freight, Inc., 365 U.S. 127 (1961).  While there is an exception for "sham" litigation, to qualify for this exception,
SBI's complaint must be "objectively baseless in the sense that no reasonable litigant could realistically expect
success on the merits."  Professional Real Estate Investors, 508 U.S. at 60.  In accordance with Supreme Court law,
"[a]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent."  Id. at 57.  Here, FC
does not allege facts to plausibly suggest that SBI's lawsuit falls into the "sham" exception.

Gatt Commc'ns, Inc. v. PMC Assocs., 711 F.3d 68, 76 (2d Cir. 2013)(internal citations and quotation marks omitted).

FC alleges "it has been damaged by SBI's unlawful, monopolistic acts, and [is therefore] entitled to treble damages." (Compl. ¶ 61.)   FC's complaint does not allege that its business of running skee-ball leagues has been halted, hindered, or altered by SBI's conduct.  Since FC fails to identify SBI's anticompetitive conduct, FC cannot allege that its "particular injury was … caused by an exercise of the defendant's newly acquired power to raise prices."  Port Dock & Stone Corp., 507 F.3d at 123  (no antitrust standing where manufacturer terminated relationship with plaintiff after acquiring plaintiff's only competition, because plaintiff's injury arose from the termination of the relationship, not from any new-found monopolistic power to raise prices).  Therefore, FC's Sherman Act Section 2 claim is dismissed.

CONCLUSION

Accordingly, the Court grants SBI's motion to dismiss FC's claims in Counts IV and VII that SBI breached the 2005 oral contract, breached the 2010 confidentiality agreement, and violated Section 2 of the Sherman Act.  The Court denies SBI's motion to dismiss FC's breach of the covenant of good faith and fair dealing and unfair competition claims.  SBI's alternative request for a more definite statement under Fed. R. Civ. P. 12(e) is denied.  The Court shall hold a status conference in this matter on May 20, 2014 at 10:00 a.m. in Courtroom 11A South.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  May 13, 2014
        Brooklyn, New York